16 Civ. 799 (LDH) (VMS)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JEFFREY LAX,

Plaintiff,

-against-

THE CITY UNIVERSITY OF NEW YORK, and
STUART SUSS,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: John Corbin Carter*
*Tel: (212) 356-2078*
*Matter No.: 2016-006076*

**Served June 11, 2018**

# TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** ..................................................................................... iii

**PRELIMINARY STATEMENT** ................................................................................ 1

**STATEMENT OF FACTS** ......................................................................................... 2

    A.   Factual History ............................................................................................. 2

    B.   Defendants' Opposition to Plaintiff's 56.1 Counterstatement of Facts .............................................. 2

**ARGUMENT**

    **POINT I**

        INDIVIDUAL LIABILITY DOES NOT EXIST UNDER TITLE VII ................................................ 3

    **POINT II**

        PLAINTIFF'S FEDERAL CLAIMS ARE ALL BARRED IN PART BY THE APPLICABLE STATUTES OF LIMITATION ................................................ 3

        A.   Title VII Claims ................................................................................ 3

        B.   Section 1983 Claims ......................................................................... 4

    **POINT III**

        PLAINTIFF'S SECTION 1983 CLAIMS SHOULD BE DISMISSED AGAINST ALL DEFENDANTS ................................................ 5

        A.   Section 1983 Claims Against CUNY ................................................ 5

        B.   Section 1983 Claims Against Suss .................................................... 8

            i.   *Lack of Personal Involvement* .............................................. 8

            ii.  *Qualified Immunity on Section 1983 Retaliation Claims* .......................................... 9

    **POINT IV**

        PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY BECAUSE PLAINTIFF FAILED TO COMPLY WITH THE NOTICE OF CLAIM REQUIREMENTS IN NEW YORK EDUCATION LAW § 6224 ................................................ 10

        A.   Plaintiff's Failure to Affirmatively Plead Compliance ................................................ 11

        B.   Insufficiency of Plaintiff's Notice of Claim ..................................... 12

        C.   Plaintiff's State Claims Prior To May 21, 2015 Must Be Dismissed ................................................ 13

    **POINT V**

        PLAINTIFF'S REMAINING CLAIMS FAIL AS A MATTER OF LAW ................................................ 13

        A.   Applicable Standard of Review ........................................................ 13

        B.   Disparate Treatment Discrimination Claims ..................................... 13

            i.   *Insufficiency of Adverse Actions* ........................................ 14

**Page**

          a.  May 2013 Promotion to Professor .........................................15
          b.  September 2015 Director of eLearning
             Position ................................................................15
      ii.  *Failure to Show Causal Relationship* .............................16
      iii.  *Lack of Qualifications for Promotion* ...........................20
  C.  Hostile Work Environment Claims ........................................20
  D.  Retaliation Claims ...................................................................23
      i.  *Insufficiency of Protected Activities*.............................24
      ii.  *Insufficiency of Certain "Adverse Actions"* ................25
      iii.  *Failure to Show Causal Relationship* ...........................26
  E.  Defendants Have Articulated Legitimate, Non-
     Discriminatory, Non-Retaliatory Reasons for
     Their Actions That Are Not False or Pretextual...............................27

**CONCLUSION** .................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Pages**

Anyanwu v. City of New York,
   No. 10 Civ. 8498,
   2013 U.S. Dist. LEXIS 132138 (S.D.N.Y. Sept. 16, 2013)....................................................19

Ashcroft v. al-Kidd,
   563 U.S. 731 (2011)..............................................................................................................10

Back v. Hastings on Hudson Union Free Sch. Dist.,
   365 F.3d 107 (2d Cir. 2004)...................................................................................................8

Bd. of Comm'rs v. Brown,
   520 U.S. 397 (1997)...........................................................................................................5, 6

Black v. Coughlin,
   76 F.3d 72 (2d Cir. 1996).......................................................................................................9

Burlington Northern & Sante Fe Ry. Co. v. White,
   548 U.S. 53 (2006)................................................................................................................27

Butterfield-Bajinan v. City of New York,
   No. 16 Civ. 5919,
   2017 U.S. Dist. LEXIS 146704 (S.D.N.Y. Sept. 11, 2017).....................................................3

Byra-Grzegorczyk v. Bristol-Myers Squibb Co.,
   572 F. Supp. 2d 233 (D. Conn. 2008)..................................................................................23

Byrnie v. Town of Cromwell Bd. of Educ.,
   243 F.3d 93 (2d Cir. 2001)...................................................................................................21

C.S.A. Contr. Corp. v. N.Y.C. Sch. Constr. Auth.,
   5 N.Y.3d 189 (2005) ............................................................................................................13

Camarella v. East Irondequoit Cent. Sch. Bd.,
   34 N.Y.2d 139 (1974) ..........................................................................................................12

Carlton v. Mystic Transp., Inc.,
   202 F.3d 129 (2d Cir. 2000).................................................................................................18

Castagna v. Luceno,
   No. 09 Civ. 9332,
   2011 U.S. Dist. LEXIS 45567 (S.D.N.Y. Apr. 26, 2011)................................................26, 27

**Cases**                                                                                                            **Pages**

Chuang v. T.W. Wang Inc.,
 647 F. Supp. 2d 221 (E.D.N.Y. 2009) ...................................................................18

City of Oklahoma v. Tuttle,
 471 U.S. 808 (1985)........................................................................................6

Clark Cnty. Sch. Dist. v. Breeden,
 532 U.S. 268 (2001)......................................................................................28

Clissuras v. City Univ. of New York,
 359 F.3d 79 (2d Cir. 2004)..............................................................................5

Cobb v. Pozzi,
 363 F.3d 89 (2d Cir. 2004)............................................................................28

Collins v. Stasiuk,
 56 F. Supp. 2d 344 (S.D.N.Y. 1999)...................................................................6

D'Amico v. City of New York,
 132 F.3d 145 (2d Cir. 1998)...........................................................................21

Dawson v. Bumble & Bumble,
 398 F.3d 211 (2d Cir. 2005)...........................................................................14

DeJesus v. Starr Technical Risks Agency, Inc.,
 No. 03 Civ. 1298,
 2004 U.S. Dist. LEXIS 19213 (S.D.N.Y. Sept. 27, 2004)........................................20

Drummond v. IPC Int'l Inc.,
 400 F. Supp. 2d 521 (E.D.N.Y. 2005) ...............................................................21

Early v. Wyeth Pharms., Inc.,
 603 F. Supp. 2d 556 (S.D.N.Y. 2009)................................................................23

Ferraro v. N.Y.C. Dep't of Educ.,
 No. 15 Civ. 1117 (LDH),
 2017 U.S. Dist. LEXIS 161799 (E.D.N.Y. Sept. 30, 2017)................................20, 21

Fierro v. N.Y.C. Dep't of Educ.,
 994 F. Supp. 2d 581 (S.D.N.Y. 2014)..................................................................6

Figueroa v. N.Y.C. Health & Hosps. Corp.,
 No. 03 Civ. 9589, 2007 U.S. Dist. LEXIS 58342 (E.D.N.Y. Aug. 7, 2007) ...........................15

Fincher v Cnty. of Westchester,
 979 F Supp. 989 (S.D.N.Y. 1997) ...................................................................13

**<u>Cases</u>**                                                                                          **<u>Pages</u>**

<u>Fincher v. Depository Trust & Clearing Corp.</u>,
 604 F.3d 712 (2d Cir. 2010) ................................................................................. 24

<u>Fisher v. Vassar College</u>,
 114 F.3d 1332 (2d Cir. 1997),
 <u>cert. denied</u>, 522 U.S. 1075 (1998) ............................................................... 29, 30

<u>Flanagan v. N.Y.C. Dep't of Educ.</u>,
 No. 13 Civ. 8456,
 2015 U.S. Dist. LEXIS 179845 (S.D.N.Y. Aug. 21, 2015) ...................................... 7

<u>Flynn v. N.Y. State Div. of Parole</u>,
 620 F. Supp. 2d 463 (S.D.N.Y. 2009) .................................................................... 17

<u>Galabya v. N.Y.C. Bd. of Educ.</u>,
 202 F.3d 636 (2d Cir. 2000) ............................................................................ 15, 16

<u>Galimore v. City Univ. of N.Y. Bronx Cmty. Coll.</u>,
 641 F. Supp. 2d 269 (S.D.N.Y. 2009) .................................................................... 28

<u>Giaccio v. City of New York</u>,
 308 F. App'x 470 (2d Cir. 2009) .............................................................................. 6

<u>Goldstein v. Borough of Manhattan Cmty. Coll.</u>,
 No. 12 Civ. 8589,
 2013 U.S. Dist. LEXIS 102277 (S.D.N.Y. July 18, 2013) ...................................... 12

<u>Grady v. Affiliated Cent., Inc.</u>,
 130 F.3d 553 (2d Cir. 1997),
 <u>cert. denied</u>, 525 U.S. 936 (1998) .......................................................................... 18

<u>Guy v. MTA N.Y. City Transit</u>,
 No. 15 Civ. 2017 (LDH),
 2016 U.S. Dist. LEXIS 130919 (E.D.N.Y. Sept. 23, 2016) ..................................... 22

<u>Hargroves v City of New York</u>,
 No. 03 Civ. 1668,
 2014 U.S. Dist. LEXIS 41661 (E.D.N.Y. Mar. 26, 2014) ....................................... 13

<u>Harper v. City of New York</u>,
 424 F. App'x 36 (2d Cir. 2011) ................................................................................ 5

<u>Hicks v. Baines</u>,
 593 F.3d 159 (2d Cir. 2010) ............................................................................ 25, 27

**Cases**                                                                                                                    **Pages**

Hill v. Rayboy-Brauestein,
    467 F. Supp. 2d 336 (S.D.N.Y.2006)........................................................................23

Holtz v. Rockefeller & Co., Inc.,
    258 F.3d 62 (2d Cir. 2001)............................................................................... 2-3

Howard v. City of New York,
    602 F. App'x 545 (2d Cir. 2015) ............................................................................28

Hurdle v. Bd. of Educ.,
    113 F. App'x 423 (2d Cir. 2004) ..............................................................................6

Jeffes v. Barnes,
    208 F.3d 49 (2d Cir. 2000)...............................................................................5, 7

Kamrowski v. Morrison Mgmt. Specialist,
    No. 05 Civ. 9234,
    2010 U.S. Dist. LEXIS 103290 (S.D.N.Y. Sept. 29, 2010)....................................23

Kerzer v. Kingly Mfg.,
    156 F.3d 396 (2d Cir. 1998).....................................................................................15

Lane v. Franks,
    134 S.Ct. 2369 (2014)................................................................................................10

Leibovitz v. N.Y.C. Transit Auth.,
    252 F.3d 179 (2d Cir. 2001)...........................................................................22, 23

Littlejohn v. City of New York,
    795 F.3d 297 (2d Cir. 2015).............................................................................17, 22

Lore v. City of Syracuse,
    670 F.3d 127 (2d Cir. 2012).......................................................................................3

Magnan v. Manhattan Eye, Ear & Throat Hosp.,
    No. 01 Civ. 6306,
    2002 U.S. Dist. LEXIS 3437 (S.D.N.Y. Feb. 28, 2002).........................................18

Maresco v. Evans Chemetics,
    964 F.2d 106 (2d Cir. 1992).....................................................................................25

McCullough v. Wyandanch Union Free Sch. Dist.,
    187 F.3d 272 (2d Cir. 1999).....................................................................................10

**Cases**                                                                                                **Pages**

McDonald v. Bd. of Educ.,
   No. 01 Civ. 1991, 2003 U.S. Dist. LEXIS 13338 (S.D.N.Y. 2003) .........................................8

McDonnell Douglas Corp. v. Green,
   411 U.S. 792 (1973)......................................................................................................14

McKie v. LaGuardia Cmty. Coll./CUNY,
   85 A.D.3d 453 (N.Y. 2011) ...........................................................................................12

Monell v. Dep't of Soc. Servs.,
   436 U.S. 658 (1978)........................................................................................................5

Montague v. Sodexco, Inc.,
   No. 15 Civ. 972,
   2017 U.S. Dist. LEXIS 165968 (D. Conn. Oct. 6, 2017) ......................................................23

Morris v. Lindau,
   196 F.3d 102 (2d Cir. 1999).............................................................................................28

Nagle v. Marron,
   663 F.3d 100 (2d Cir. 2011)........................................................................................10, 28

Owen v. Haas,
   601 F.2d 1242 (2d Cir. 1979),
   cert. denied, 444 U.S. 980 (1979) ......................................................................................5

Patane v. Clark,
   508 F.3d 106 (2d Cir. 2007)............................................................................................22

Pearson v. Callahan,
   555 U.S. 223 (2009).......................................................................................................10

Pikulin v. City Univ. of New York,
   176 F.3d 598 (2d Cir. 1991).............................................................................................5

Powell v. Consol. Edison Co. of N.Y., Inc.,
   No. 97 Civ. 2439, 2001 U.S. Dist. LEXIS 2706 (S.D.N.Y. Mar. 13, 2001)...........................18

Preston v. Bristol Hosp.,
   645 F. App'x 17 (2d Cir. 2016) ..................................................................................16, 17

Pronin v. Raffi Custom Photo Lab, Inc.,
   383 F. Supp. 2d 628 (S.D.N.Y. 2005).................................................................................23

Quarless v. Bronx-Lebanon Hosp. Ctr.,
   228 F. Supp. 2d 377 (S.D.N.Y. 2002)................................................................................16

**Cases**                                                                                                          **Pages**

Renz v. Grey Advertising Co.,
 135 F.3d 217 (2d Cir. 1997).....................................................................................21

Ross v. Breslin,
 693 F.3d 300 (2d Cir. 2012)......................................................................................10

Ruiz v. Cnty. of Rockland,
 609 F.3d 486 (2d Cir. 2010)......................................................................................14

Scott v. Fischer,
 616 F.3d 100 (2d Cir. 2010)......................................................................................10

Senno v. Elmsford Union Free Sch. Dist.,
 812 F. Supp. 2d 454 (S.D.N.Y. 2011)........................................................................2

Siegel v. La Guardia Cmty. Coll.,
 No. 05 Civ. 320, 2006 U.S. Dist. LEXIS 22931 (E.D.N.Y. Apr. 25, 2006),
 aff'd, 249 F. App'x 850 (2d Cir. 2007)......................................................................12

Smith v. Campbell,
 782 F.3d 93 (2d Cir. 2015).........................................................................................4

Soto v. Schembri,
 960 F. Supp. 751 (S.D.N.Y. 1997) .............................................................................6

St. Mary's Honor Ctr. v. Hicks,
 509 U.S. 502 (1993)..................................................................................................15

Tomasino v. St. John's Univ.,
 476 Fed. App'x 923 (2d Cir. 2012).....................................................................30-31

Van Zant v. KLM Royal Dutch Airlines,
 80 F.3d 708 (2d Cir. 1996).........................................................................................4

Vega v. Hempstead Union Free Sch. Dist.,
 801 F.3d 72 (2d Cir. 2015)........................................................................................11

Vivenzio v. City of Syracuse,
 611 F.3d 98 (2d Cir. 2010)........................................................................................15

Walder v. White Plains,
 738 F. Supp. 2d 483 (S.D.N.Y. 2010).................................................................15, 21

Washington v. Borough of Manhattan Cmty. Coll.,
 No. 16 Civ. 6168,
 2016 U.S. Dist. LEXIS 176593 (S.D.N.Y. Dec. 21, 2016) ...............................12, 14

**Cases**                                                                                                            **Pages**

White v. N.Y.C. Housing Auth.,
    288 A.D.2d 150 (N.Y. 2001) ...................................................................................................13

**Statutes**

42 U.S.C. § 1983 ...........................................................................................1, 3, 4, 5, 8, 9, 10, 11, 14

Fed. R. Civ. P. 56 .............................................................................................................................1

Fed. R. Civ. P. 56(a) ......................................................................................................................14

General Municipal Law § 50-i ........................................................................................................13

General Municipal Law § 50-e ........................................................................................................13

Local Civil Rule 56.1 ...................................................................................................................2, 3

N.Y. Educ. Law § 6206(7) ...........................................................................................................7, 8

N.Y. Educ. Law § 6224 .............................................................................................1, 11, 12, 13

N.Y. Educ. Law § 6224(2) .........................................................................................................11, 12

## PRELIMINARY STATEMENT

Plaintiff Jeffrey Lax ("Plaintiff"), the current Chair of the Business Department at the City University of New York's ("CUNY") Kingsborough Community College ("KCC"), alleges that Defendants CUNY and Stuart Suss, the former Vice President of Academic Affairs and Provost ("Provost") at KCC, discriminated against him on the basis of his religion (Judaism) through disparate treatment, subjected him to a hostile work environment due to his religion, and retaliated against him for making protected complaints about religious discrimination. With Defendant Suss as Provost or Acting President at KCC, Plaintiff was hired, granted tenure, promoted twice, and appointed Chair of his Department after only ten years on the faculty. Nonetheless, Plaintiff claims to be the victim of anti-Semitism. However, Plaintiff points to nothing other than speculations and baseless accusations to support his claim that administrators (including a Provost, President and Legal Counsel who all openly identify as Jewish) discriminated against him because of his religion.

Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, as there is no genuine issue of material fact that could preclude dismissal of all claims under 42 U.S.C. § 1983 ("Section 1983"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("SHRL"), or the New York City Human Rights Law ("CHRL") as a matter of law.

First, Plaintiff's claims are fatally plagued by procedural defects: Title VII does not support individual liability; all claims are barred at least in part by applicable statutes of limitation; Plaintiff's Section 1983 claims may not proceed against CUNY due to restraints on municipal liability, nor against Suss due to his lack of personal involvement in alleged conduct and his entitlement to qualified immunity on some claims; and Plaintiff's state law claims must fail because he did not comply with New York Education Law § 6224's requirements. Second,

1

the record demonstrates that Plaintiff cannot establish that he suffered sufficiently adverse actions motivated by discriminatory intent; that Plaintiff himself suffered a severe and pervasive hostile work environment; or that any of his alleged protected activities led to retaliatory adverse actions. Finally, even if Plaintiff were to set forth a prima facie case as to any of these claims, Defendants can proffer legitimate, non-discriminatory, non-retaliatory justifications for each and every decision Plaintiff contests, for which no showing of pretext could be made.

As the evidentiary record reflects no genuine issue of material fact preventing this action from being resolved as a matter of law, Defendants are entitled to summary judgment.

## STATEMENT OF FACTS

### A.    Factual History

The Court is respectfully referred to Defendants' Local Rule 56.1 Statement of Undisputed Facts, dated December 20, 2017 ("Defs. 56.1"), the Declaration of John Corbin Carter, dated December 20, 2017 ("Carter Decl."), the Declaration of Anne Chamberlain, dated December 20, 2017 ("Chamberlain Decl."), the Declaration of Stuart Suss, dated May 8, 2018 ("Suss Decl."), the Declaration of Mickie Driscoll, dated June 11, 2018 ("Driscoll Decl."), the Declaration of Loretta Brancaccio-Taras, dated June 11, 2018 ("Taras Decl."), and the supporting evidence cited therein for a full statement of pertinent and material facts.

### B.    Defendants' Opposition to Plaintiff's 56.1 Counterstatement of Facts

Numerous denials and non-responses set forth in Plaintiff's Rule 56.1 Counterstatement of Facts ("Pl. 56.1 Opp.") fail to cite supporting evidence, cite evidence not supporting the denial, are non-responsive, fail to respond due to Plaintiff's unsupported belief that a subject is immaterial, or purport to respond relying solely on Plaintiff's subjective and irrelevant views, such as asserting that a person's religion is "unclear" notwithstanding that person's clear testimony to the contrary. See Pl. 56.1 Opp., ECF No. 41, at ¶¶ 7, 16-25, 41, 45,

2

47-48, 50, 56-59, 64-65, 70-71, 79, 81, 84-86, 88-90, 94, 106, 112, 116, 118, 124, 132, 135, 138, 144, 158, 160, 162, 167-68, 175, 179-81, 186, 188. "Responses of this nature, which do not point to any evidence in the record that may create a genuine issue of material fact, do not function as denials, and will be deemed admissions of the stated fact." Senno v. Elmsford Union Free Sch. Dist., 812 F. Supp. 2d 454, 458 n.l (S.D.N.Y. 2011); see also Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) ("[W]here there are no citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion"). Where Plaintiff's 56.1 Opposition fails to actually rebut Defendants' evidentiary-based assertions, Defendants respectfully requests that the Court disregard Plaintiff's denials.

## ARGUMENT

### POINT I

### INDIVIDUAL LIABILITY DOES NOT EXIST UNDER TITLE VII

"Title VII does not impose liability on individuals." Lore v. City of Syracuse, 670 F.3d 127, 169 (2d Cir. 2012) (collecting cases). Accordingly, Defendant Suss must be dismissed as a defendant under Plaintiff's Title VII claims.

### POINT II

### PLAINTIFF'S FEDERAL CLAIMS ARE ALL
### TIME-BARRED IN PART OR IN FULL

Plaintiff commenced this action on March 17, 2017, suing under Title VII and Section 1983, as well as state statutes. Many of Plaintiff's federal claims are time-barred.

**A.**     **Title VII Claims**

"In order to assert a Title VII claim in federal court, a plaintiff must first file a charge of discrimination [or retaliation] with the EEOC within 180 days of the alleged unlawful employment action or . . . with a state or local equal employment agency, within 300 days of the

alleged discriminatory action." Butterfield-Bajinan v. City of New York, No. 16 Civ. 5919, 2017 U.S. Dist. LEXIS 146704, at *3 (S.D.N.Y. Sept. 11, 2017) (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996)). Here, Plaintiff filed his EEOC charge on August 4, 2015. See Carter Decl., Exhibit "F," at 2. Consequently, allegations of discrimination or retaliation based upon events occurring before October 8, 2014 are time-barred by the 300-day limit. Time-barred allegations include Plaintiff's May 2013 promotion denial, his Spring 2014 salary request denial, his March and June 2014 purported protected activities, and numerous allegations regarding treatment of other Jewish individuals at KCC prior to October 8, 2014. See Defs. 56.1 ¶¶ 55, 72, 125-26, 146-70. To the extent that Plaintiff relies upon any of these time-barred allegations to support his claims, those claims should be dismissed.

**B.      Section 1983 Claims**

In New York, Section 1983 claims are subject to a three-year statute of limitations. See Smith v. Campbell, 782 F.3d 93, 100 (2d Cir. 2015). As Plaintiff commenced this action on February 16, 2016, any Section 1983 claims based on incidents prior to February 16, 2013, are time-barred. See Defs. 56.1 ¶ 29. The Amended Complaint relies on several incidents occurring prior to February 16, 2013, including allegations concerning a 2011 Suss-directed "revers[al] of the P[ersonnel] & B[udget] Committee's decision to non-reappoint a faculty member," Anna Geller (see Am. Compl. ¶ 92); the 2011 decision not to hire Jewish candidate Dov Fischer (see Defs. 56.1 ¶¶ 139-44); and purported discrimination by then-Chair of Biological Sciences, Loretta Brancaccio-Taras ("Taras") in 2009-2011 against retired Jewish faculty members who sought adjunct positions (see id. ¶¶ 125-31). To the extent that Plaintiff relies on these time-barred allegations to support his claims, those claims must be dismissed.

4

**POINT III**

**PLAINTIFF'S SECTION 1983 CLAIMS SHOULD BE DISMISSED AGAINST ALL DEFENDANTS**

A.      **Section 1983 Claims Against CUNY**

Plaintiff's Section 1983 claims against CUNY should be dismissed because he failed to plead or demonstrate that the alleged violations resulted from an official policy or custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Owen v. Haas, 601 F.2d 1242, 1245-46 (2d Cir. 1979), cert. denied, 444 U.S. 980 (1979); see also Clissuras v. City Univ. of New York, 359 F.3d 79, 81-82 (2d Cir. 2004) (citing Pikulin v. City Univ. of New York, 176 F.3d 598, 600 (2d Cir. 1991) (establishing CUNY is a municipal entity subject to Monell)). To hold CUNY liable under Section 1983, Plaintiff has the burden of establishing that CUNY deprived him of a constitutional right through a CUNY "policy," "practice," or "custom." See Monell, 436 U.S. at 690-95; Jeffes v. Barnes, 208 F.3d 49, 57-58 (2d Cir. 2000). A mere assertion that the entity has such a policy is insufficient to establish Monell liability. See Bd. of Comm'rs v. Brown, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of respondeat superior.") (citations omitted); Harper v. City of New York, 424 F. App'x 36, 38 (2d Cir. 2011) (summary order). The Supreme Court is clear with respect to municipal liability:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. . . . The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

5

Brown, 520 U.S. at 404 (emphasis added); see also Fierro v. N.Y.C. Dep't of Educ., 994 F. Supp. 2d 581, 588-89 (S.D.N.Y. 2014).

Proof of a single incident of unconstitutional activity is generally insufficient to demonstrate the existence of a custom or policy. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 821 (1985). Finding that a specific employment action is a "personnel decision and nothing more," courts in this Circuit have noted that "[i]t is hard to imagine any decision that falls farther outside the common understanding of the word 'policy.'" Soto v. Schembri, 960 F. Supp. 751, 759 (S.D.N.Y. 1997). In addition, a decision taken with respect to a single employee is not "so 'persistent and widespread' as to justify the imposition of municipal liability." Giaccio v. City of New York, 308 F. App'x 470, 472 (2d Cir. 2009) (internal quotations omitted).

"[Li]ability under Monell may be premised on any of three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a 'final policymaker.'" Hurdle v. Bd. of Educ., 113 F. App'x 423, 424-25 (2d Cir. 2004) (summary order). Here, nothing alleged plausibly supports a claim that there was a CUNY policy, practice, or custom to impermissibly discriminate or retaliate against individuals based upon their religious beliefs or appearance. Plaintiff has not alleged that CUNY has an expressly adopted policy or longstanding practice of discriminating against Jews or retaliating against them for protected conduct. See generally Am. Compl. ¶¶ 155-70. Instead, Plaintiff contends that Defendant "Suss had policy making authority due to his high-level positions and the fact that his discriminatory [and retaliatory] decisions altering the terms and conditions of Plaintiff's employment were not subject to review by another official or entity." Id. ¶¶ 158, 166. "An official has final authority if his decisions, at the time they are made, for practical or legal

reasons constitute the municipality's final decisions . . . and . . . whether someone has final authority is informed by local law." Flanagan v. N.Y.C. Dep't of Educ., No. 13 Civ. 8456, 2015 U.S. Dist. LEXIS 179845, at *47 (S.D.N.Y. Aug. 21, 2015) (citing Jeffes, 208 F.3d at 57).

Plaintiff cannot establish as a matter of law that Suss was a final policymaker capable of subjecting CUNY to Monell liability here. N.Y. Educ. Law § 6206(7) states that "[t]he board of trustees [of CUNY] shall establish positions, departments, divisions and faculties; [and] appoint and in accordance with the provisions of law fix salaries of instructional and non-instructional employees therein." Accordingly, under state law, the establishment of faculty positions, appointment to those faculty positions, and salary setting are all ultimately the express duties of the CUNY Board of Trustees. See id. As Plaintiff admits, Defendant Suss served as Provost at KCC from 1999 through September 2013 and from July 2014 through his retirement in September 2015. See Defs. 56.1 ¶ 5. During his time as Provost, Suss's recommendations regarding personnel decisions were subject to review by KCC's President and ultimately the final policymaking authority, CUNY's Board of Trustees. See Carter Decl. Exhibit "B," Pl. Tr. 73:19 – 74:5 (acknowledging the President's power to accept or reject committee recommendations regarding hiring); id. at 455:5-9 (acknowledging that salary increase requests are subject to President's review); see also Stark Decl., Exhibit "1," Pl. Tr. 223:3-8 (acknowledging that the Provost only recommends persons for hire). Even during Suss's September 2013 through July 2014 service as KCC Interim President, any decisions Suss made were ultimately subject to the final policymaking authority, CUNY's Board of Trustees. See N.Y. Educ. Law § 6206(7); accord McDonald v. Bd. of Educ., No. 01 Civ. 1991, 2003 U.S. Dist. LEXIS 13338, at *14 (S.D.N.Y. July 31, 2003) (holding that even though a superintendent had the power to make hiring decisions, that did "not in itself give rise to potential Section 1983

liability" and make the superintendent a "final policymaker" as both the Chancellor and the Board of Education had the authority to overrule the superintendent's decisions).

Accordingly, the alleged actions of Defendant Suss cannot constitute the actions of a "final policymaker" sufficient to incur municipal liability against CUNY as a matter of law.

**B.**     **Section 1983 Claims Against Suss**

Plaintiff's Section 1983 claims should also be dismissed against Defendant Suss.

**i.**     **Lack of Personal Involvement**

Defendant Suss was not personally involved in most of the adverse actions Plaintiff alleges. A defendant's personal involvement in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983. See Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004). "In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a person acting under the color of state law, and (b) that the defendant caused the plaintiff to be deprived of a federal right." Back, 365 F.3d at 123 (internal citations omitted). As the Second Circuit has noted, "an individual cannot be held liable for damages under § 1983 'merely because he held a high position of authority,' but can be held liable if he was personally involved in the alleged deprivation." Id. at 127 (quoting Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996)).

Here, the record indicates that Suss did not personally cause most of the adverse actions alleged by Plaintiff. Suss was not involved in selecting his replacement as Provost in November 2015; he had retired and was not on the Search Committee (see Suss Decl. ¶ 3; Defs. 56.1 ¶¶ 5, 92; Carter Decl., Exhibit "T"). Suss did not cause Taras to be hired as Director of eLearning in September 2015; that decision was made by Reza Fakhari, another KCC administrator (see Carter Decl., Exhibit "R," Taras Tr. 51:23 – 52:2). Additionally, the record demonstrates that Suss did not cause the denial of Plaintiff's May 2013 petition for promotion to

8

full Professor; Suss had only one of ten votes on the College-Wide Personnel and Budget Committee ("College-Wide P&B"), the vote was 3-6-1 against Plaintiff's promotion, and no successful candidate received more than one negative vote or abstention. Plaintiff has put forth no evidence refuting the fact that Suss personally supported Plaintiff's promotion by writing a formal letter of recommendation for him and voting for him. See Defs. 56.1 ¶¶ 49-50, 55, 57; Carter Decl., Exhibit "J." The only alleged action with which Suss could reasonably be considered "personally involved" was the March 2014 request for a discretionary salary increase, which should be dismissed for the alternative reasons stated below. Accordingly, Suss cannot be held liable under Section 1983 for the majority of alleged actions as he was not sufficiently personally involved.

### ii.    Qualified Immunity on Section 1983 Retaliation Claims

Defendant Suss is also entitled to qualified immunity as to Plaintiff's Section 1983 retaliation claims. "A government agent enjoys qualified immunity when he or she performs discretionary functions if either: (1) the conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that the conduct did not violate clearly established rights." McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999). If the Court answers either question in Defendant's favor, qualified immunity attaches and summary judgment is required for that Defendant. See Pearson v. Callahan, 555 U.S. 223, 235 (2009); Ross v. Breslin, 693 F.3d 300, 304-05 (2d Cir. 2012). Whether a right is "clearly established" depends on 1) whether the right was defined with reasonable specificity at the time of the conduct; 2) whether there is case law from the Supreme Court or courts of appeal that supports the existence of that right; and 3) whether under existing law defendants would have known their actions were unlawful. See Scott v. Fischer, 616 F.3d 100, 105 (2d Cir. 2010). The objective reasonableness of the official's action

is "assessed in light of the legal rules that were clearly established at the time [the action] was taken," and therefore the focus is "on whether, at the time of the alleged conduct, the right was clearly established, rendering it objectively unreasonable for an official to think that his action was lawful." Nagle v. Marron, 663 F.3d 100, 115 (2d Cir. 2011). The Supreme Court has repeatedly cautioned that a "clearly established right" cannot be defined with a high level of generality, but, that existing precedent must have placed the question "beyond debate." See Lane v. Franks, 134 S.Ct. 2369, 2383 (2014); Ashcroft v. al-Kidd, 563 U.S. 731, 741-42 (2011).

In this case, the conduct alleged against Suss occurred prior to Suss's retirement in September 2015. At all times during that period, it was not "beyond debate" that a plaintiff could bring a Section 1983 claim based upon discrimination-based retaliation. Critically, in an opinion dated September 2, 2015, the Second Circuit squarely acknowledged "that there has been considerable confusion surrounding the viability of retaliation claims under § 1983, and we now clarify that retaliation claims alleging an adverse action because of a complaint of discrimination are actionable under § 1983." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 80 (2d Cir. 2015). The Vega Court went on to say that the Second Circuit has "sent conflicting signals" as to "whether an employment retaliation claim tied to a deprivation of any rights, privileges, or immunities under the Equal Protection Clause of the Fourteenth Amendment is actionable under [Section 1983]." Id. at 80-81. As the viability of Section 1983 claims was not "beyond debate" as a clearly established principle before September 2015, Defendant Suss is entitled to qualified immunity.

### POINT IV

### PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY BECAUSE PLAINTIFF FAILED

**TO COMPLY WITH NEW YORK EDUCATION LAW § 6224**

Plaintiff's CHRL and SHRL claims against CUNY and Defendant Suss are barred in their entirety because Plaintiff did not file a sufficient and timely notice of claim as mandated by N.Y. Education Law § 6224. Section 6224(2) requires that a sufficient and timely notice of claim be filed before any suit may be brought against CUNY or its officers:

> No action or proceeding based on a cause of action involving a community college of the city university of New York or an officer, agent, servant or employee of such community college acting in the course of his employment may be prosecuted or maintained unless it shall appear by and as an allegation in the complaint or necessary moving papers that at least thirty days have elapsed since a demand setting forth the underlying basis for such matter was presented to the city university for adjustment, and that the officers or bodies having the power to adjust or pay such demand have neglected or refused to make an adjustment or payment thereof for thirty days, after such presentment.

Id. § 6224(2). Under this plain language, the notice of claim requirement attaches to CUNY as well as Suss, an "officer, agent, servant, or employee" of a CUNY community college. Id. Courts in this Circuit have held that the § 6224 requirement "applies to all claims." Washington v. Borough of Manhattan Cmty. Coll., No. 16 Civ. 6168, 2016 U.S. Dist. LEXIS 176593, at *2-5 (S.D.N.Y. Dec. 21, 2016) (quoting McKie v. LaGuardia Cmty. Coll., 85 A.D.3d 453, 454 (N.Y. 2011)); Siegel v. La Guardia Cmty. Coll., No. 05 Civ. 320, 2006 U.S. Dist. LEXIS 22931, at *17 (E.D.N.Y. Apr. 25, 2006), aff'd, 249 F. App'x 850 (2d Cir. 2007) (noting that "Plaintiff's failure to file a timely notice of claim requires dismissal of his NYSHRL claim").

**A.     Plaintiff's Failure to Affirmatively Plead Compliance**

Plaintiff's SHRL and CHRL claims must also be dismissed for failure to affirmatively plead compliance with Section 6224, which expressly states that "[n]o action or proceeding . . . may be prosecuted or maintained unless it shall appear by and as an allegation in

11

the complaint or necessary moving papers that at least thirty days have elapsed since a demand setting forth the underlying basis for such matter was presented to the city university for adjustment . . . ." Further, "the burden of pleading and proving compliance with the notice requirements lies with the plaintiff." Goldstein v. Borough of Manhattan Cmty. Coll., No. 12 Civ. 8589, 2013 U.S. Dist. LEXIS 102277, at *11-12 (S.D.N.Y. July 18, 2013) (citing Camarella v. East Irondequoit Cent. Sch. Bd., 34 N.Y.2d 139 (1974)). Here, the Amended Complaint makes no mention of a notice of claim, much less that "at least thirty days have elapsed since a demand . . . was presented to the city university for adjustment." N.Y. Educ. Law § 6224(2); see generally Am. Compl. For this reason alone, Plaintiff's state law claims must be dismissed in their entirety. See C.S.A. Contr. Corp. v. N.Y.C. Sch. Constr. Auth., 5 N.Y.3d 189, 192 (2005).

## B.   <u>Insufficiency of Plaintiff's Notice of Claim</u>

Plaintiff's Notice of Claim also fails to sufficiently encompass the discrimination and retaliation claims brought here. Courts in this Circuit have routinely held that causes of action and theories of liability not mentioned in a notice of claim may not be included in a subsequent federal lawsuit. See Fincher v Cnty. of Westchester, 979 F Supp. 989, 1003 (S.D.N.Y. 1997); see also Hargroves v City of New York, No. 03 Civ. 1668, 2014 U.S. Dist. LEXIS 41661, at *21-22 (E.D.N.Y. Mar. 26, 2014) (collecting cases in which claims were dismissed because the notice did not incorporate them). Plaintiff filed a Notice of Claim on August 19, 2015 (the "Notice of Claim"). See Carter Decl., Exhibit "H"; Defs. 56.1 ¶ 28. In the section entitled "the nature of the claim," the Notice of Claim was limited to the following: "breach of fiduciary duties, libel per se, slander per se, intentional infliction of emotional distress, libel, slander." Id. It did not remotely put Defendants on notice that Plaintiff would bring discrimination or retaliation claims under the SHRL or CHRL. Consequently, the

insufficiency of the Notice of Claim provides another ground for dismissal of Plaintiff's SHRL and CHRL claims here. See White v. N.Y.C. Housing Auth., 288 A.D.2d 150 (N.Y. 2001).

**C.      Plaintiff's State Claims Prior To May 21, 2015 Should Be Dismissed**

Notwithstanding the independent grounds for dismissal listed above, Plaintiff's state law claims involving any conduct occurring prior to May 21, 2015 should be dismissed as untimely. "Section 6224 expressly incorporates the requirements of [N.Y.] General Municipal Law §§ 50—e and 50—i which include [a] requirement of filing a notice of claim within 90 days as a condition precedent to bringing suit . . . ." Washington, 2016 U.S. Dist. LEXIS 176593, at *2-3 (internal quotations omitted). As Plaintiff filed his Notice of Claim on August 19, 2015, any allegations occurring prior to May 21, 2015 are time-barred under the SHRL and CHRL.

**POINT V**

**PLAINTIFF'S REMAINING CLAIMS FAIL
AS A MATTER OF LAW**

**A.  Applicable Standard of Review**

Summary judgment may be granted when all of the submissions taken together show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**B.  Disparate Treatment Discrimination Claims**

Plaintiff cannot establish a prima facie case of disparate treatment discrimination here, as there is no evidence from which a rational trier of fact could conclude that any sufficiently adverse act occurred based upon his religion. Under the McDonnell Douglas burden-shifting framework, Plaintiff bears the initial burden of establishing a prima facie case of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); Ruiz v. Cnty. of Rockland, 609 F.3d 486, 491 (2d Cir. 2010) (noting that Section 1983 claims are

13

analyzed under the burden-shifting framework); Dawson v. Bumble & Bumble, 398 F.3d 211, 216-27 (2d Cir. 2005) (applying same framework to SHRL and CHRL claims). If Plaintiff establishes a prima facie claim, the burden shifts to Defendants to offer a legitimate, nondiscriminatory rationale for their actions. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993). If Defendants articulate such a reason, the burden shifts back to Plaintiff to present "admissible evidence that would be sufficient to permit a rational finder of fact to infer that the employer's proffered reason is pretext for an impermissible motivation." Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010). To meet this burden, Plaintiff must demonstrate that the proffered reasons are false and that the real reason was unlawful discrimination. See Kerzer v. Kingly Mfg., 156 F.3d 396, 401 (2d Cir. 1998). To establish a prima facie case of discrimination under a disparate treatment theory, Plaintiff must demonstrate that he (1) was in a protected class; (2) was sufficiently qualified for a position or was otherwise deserving of an employment benefit; (3) suffered a sufficiently adverse action; and (4) that the action occurred under circumstances giving rise to an inference of discrimination. See Vivenzio, 611 F.3d at 106. It is undisputed that Plaintiff is Jewish, but he fails to meet the rest of his prima facie burden.

### i.     Insufficiency of Adverse Actions

Many of the circumstances Plaintiff alleges do not establish timely adverse employment actions. The Court may not consider the "cumulative effect" of alleged circumstances that, if analyzed in isolation, would not prove sufficiently adverse on their own. See, e.g., Walder v. White Plains, 738 F. Supp. 2d 483, 498-500 (S.D.N.Y. 2010); Figueroa v. N.Y.C. Health & Hosps. Corp., No. 03 Civ. 9589, 2007 U.S. Dist. LEXIS 58342, at *31 n.8 (E.D.N.Y. Aug. 7, 2007). Plaintiff's frustrations about not being afforded legal counsel, not being assigned to all of the committees he considers sufficiently elite, not being given a lower-salaried position, being initially denied a promotion later granted with the same effective date, as

well as various other allegations, are not sufficiently adverse. See, e.g., Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (holding a plaintiff must demonstrate that he sustained a "materially adverse change in the terms and conditions of employment"); Quarless v. Bronx-Lebanon Hosp. Ctr., 228 F. Supp. 2d 377, 385-86 (S.D.N.Y. 2002).

### a.  May 2013 Promotion to Professor

Plaintiff's May 2013 "denial of promotion" theory is not sufficient to state an adverse action. The record makes clear that, despite Plaintiff's myriad allegations regarding the May 2013 College-Wide P&B promotional vote and the subsequent appeal process, Plaintiff ultimately received a promotion from Associate Professor to the title of Professor upon a revote in October 2013, with the *same effective date for the promotion that Plaintiff would have received had his May 2013 promotional vote been successful*. See Defs. 56.1 ¶¶ 34-71; see also Carter Decl., Exhibit "I" (noting that the May 2013 vote for promotion to Professor would have an "effective date" of "9/1/2013"); id., Exhibit "P" (establishing that Plaintiff received the promotion, retroactively effective to September 1, 2013). In essence, Plaintiff was initially denied a promotion by Committee, but was eventually promoted by the same Committee with no change to the promotion's effective date. See Defs. 56.1 ¶¶ 34-71. Accordingly, Plaintiff cannot show that he was denied a promotion where he received it with the same exact terms and conditions and no loss of time in that position. See Galabya, 202 F.3d at 640.

### b.  September 2015 Director of eLearning Position

Plaintiff also attempts to argue that he was denied a promotion when another faculty member – a Chair with 10 years more service to KCC – was given a part-time assignment as KCC's "Director of eLearning" in September 2015, but he lacks evidence establishing it was a promotion over his role as Chair of the Business Department. See Preston v. Bristol Hosp., 645 F. App'x 17, 19 (2d Cir. 2016) (denying Title VII claim based on denial of a position when "the

role did not warrant any additional compensation"); Flynn v. N.Y. State Div. of Parole, 620 F. Supp. 2d 463, 486 (S.D.N.Y. 2009) (granting summary judgment when only evidence of detriment to plaintiff's career was supported only by her opinion that the desired position was "more prestigious").

The person who took on the Director of eLearning position, Taras, served as a Department Chair until July 2016. Her position was at the same level as Plaintiff's, although Taras had a longer service history. See Defs. 56.1 ¶¶ 83, 87, 89. During her time as a Department Chair, Taras earned more than Plaintiff primarily because she had ten additional years of full-time faculty service. See Taras Decl. ¶¶ 2-3; see also Defs. 56.1 ¶¶ 83, 87, 89. However, after being appointed to the Director of eLearning position, Taras's total pay decreased and was lower than Plaintiff's pay in 2017. See Driscoll Tr. ¶¶ 9-11; see also Defs. 56.1 ¶ 91. The pay decrease indicates that the Director of eLearning position was not a promotion from Taras's previous position of Department Chair. See Preston, 645 F. App'x at 19. Additionally, KCC Department Chairs directly supervise dozens of employees, while the Director of eLearning directly supervises only two employees. See Taras Decl. ¶¶ 5, 12; see also Carter Decl., Exhibit "B," Lax Tr. 56:9 – 57:6; Id., Exhibit "R," Taras Tr. 64:8-20. Accordingly, as the position of Director of eLearning is not a promotion over Plaintiff's Department Chair position, Plaintiff's "denial" of the Director of eLearning role cannot constitute an adverse action.

### ii.    Failure to Show Causal Relationship

For any remaining actions that may be considered "adverse," Plaintiff cannot show genuine issues of material fact that could support an inference of discrimination. See Littlejohn v. City of New York, 795 F.3d 297, 312 (2d Cir. 2015) ("An inference of discrimination can rise from circumstances including, but not limited to . . . invidious comments about others in the employee's protected group[] or the more favorable treatment of employees

16

not in the protected group . . . ." (internal quotation marks omitted)). First, an inference of discrimination is undercut where the purported "bad actor," Defendant Suss, had previously treated Plaintiff favorably. See Chuang v. T.W. Wang Inc., 647 F. Supp. 2d 221, 233 (E.D.N.Y. 2009) ("It is difficult to impute bias against a plaintiff in a protected class where the person making the adverse employment decision also made a recent favorable employment decision regarding the plaintiff." (citing Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997)), cert. denied, 525 U.S. 936 (1998)). Here, Defendant Suss made favorable employment decisions for Plaintiff, incongruent with the claimed animus, such as appointing him Chair, strongly recommending him for promotion to Professor, voting for his promotions multiple times, and assigning him to venerable committees. See Suss Decl. ¶¶ 7-11; Defs. 56.1 ¶¶ 8, 11, 41, 50, 117-19. "When the same actor hires a person already within the protected class, and then later fires that same person, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 137 (2d Cir. 2000) (internal quotations omitted). Suss's favorable treatment of Plaintiff cuts against any theory of improper discriminatory motivation.

In addition to treating Plaintiff favorably, Defendant Suss also played a significant role in promoting, hiring, and seeking compensation increases for dozens of other Jewish individuals at KCC. See Suss Decl. ¶¶ 12-14; Defs. 56.1 ¶¶ 22, 132, 137-38, 144; see also Magnan v. Manhattan Eye, Ear & Throat Hosp., No. 01 Civ. 6306, 2002 U.S. Dist. LEXIS 3437, at *14 (S.D.N.Y. Feb. 28, 2002) (quoting Powell v. Consol. Edison Co. of N.Y., Inc., No. 97 Civ. 2439, 2001 U.S. Dist. LEXIS 2706 (S.D.N.Y. Mar. 13, 2001) (holding that evidence that members of plaintiff's protected class received favorable treatment helps negate any inference that the employer's decision not to promote plaintiff was based upon discriminatory animus)).

17

Plaintiff's claims that Suss treated other Jews unfavorably is inconsistent with the established record. In fact, Suss treated many Jews favorably, negating any inference of discrimination. For example, Plaintiff alleges that, during the May 2013 College-Wide P&B vote on promotions to full Professor, he and other Jews were denied deserved promotions. See Am. Compl. ¶¶ 38-44. Plaintiff ignores the fact that multiple Jewish individuals were among the voters, that a Jewish individual, Elie Feder, was selected for promotion during the May 2013 vote, and that a non-Jewish individual, Hope Parisi, was denied a promotion. See Defs. 56.1 ¶¶ 48, 53, 60; see also Anyanwu v. City of New York, No. 10 Civ. 8498, 2013 U.S. Dist. LEXIS 132138, at *37 (S.D.N.Y. Sept. 16, 2013). Plaintiff also complains that he was denied a place on two search committees – those for the Chief Diversity Officer and the Vice President of Finance. Plaintiff omits that both search committees had Jewish committee members, that Defendant Suss did not choose their members, and that *no* Department Chair served on either committee. See Defs. 56.1 ¶¶ 111-15. Plaintiff further claims that the failure to appoint him Provost in September 2015 was discriminatory. The record establishes that there were almost 100 candidates for the position and the Committee interviewed only 9. At least one of the individuals interviewed was Jewish. See Defs. ¶¶ 96-98. Finally, Plaintiff asserts that Taras, who is not Jewish, is the highest paid Department Chair at KCC and suggests that this is somehow discriminatory. In fact, Rina Yarmish, who is Jewish and the long-time KCC Chair of the Math Department, has been the highest-paid Department Chair at KCC for many years. See Driscoll Decl. ¶¶ 6-10.

Further, Plaintiff has not identified any similarly situated comparators whose treatment by Defendants could support an inference of discrimination. "When relying on evidence of disparate treatment to raise an inference of discrimination, a plaintiff must show that he was similarly situated in all material respects to the individuals with whom he seeks to

compare himself." <u>Ferraro v. N.Y.C. Dep't of Educ.</u>, No. 15 Civ. 1117 (LDH), 2017 U.S. Dist. LEXIS 161799, at *39-40 (E.D.N.Y. Sept. 30, 2017) (internal citations omitted). "A plaintiff and his comparators are not similarly situated where, for example, they differ in experience, tenure, or other factors that typically affect an employee's rate of pay." <u>Id.</u> (quoting <u>DeJesus v. Starr Technical Risks Agency, Inc.</u>, No. 03 Civ. 1298, 2004 U.S. Dist. LEXIS 19213, at *29-32 (S.D.N.Y. Sept. 27, 2004)) ("[T]o be 'similarly situated,' employees must be substantially similar as to specific work duties, education, seniority, and performance history, all of which affect an employee's rate of pay."). Here, Plaintiff does not offer any sufficiently similar comparators for an interference of discrimination analysis. The record does not demonstrate that any of the non-Jewish individuals Plaintiff identifies under his various adverse action theories – including Taras, Borgese, and Joanne Russell – were similarly situated to Plaintiff. <u>See</u> Defs. 56.1 ¶¶ 77-79 (establishing that Borgese, the only Department Chair who received an extra-contractual raise, received the raise as a counter-offer due to an outside employment opportunity; Plaintiff did not have an offer that needed to be countered); <u>id.</u> ¶¶ 84-87; Taras Decl. ¶¶ 2-3, 14 (establishing that Taras had been tenured longer than Plaintiff and that she had greater relevant experience qualifying her as Director of eLearning); Defs. 56.1 ¶ 100 (establishing that Plaintiff makes no attempt to show that the long-time academic administrator chosen as Provost was less qualified than he was for the position). As the "record is devoid of evidence demonstrating that any individuals outside of Plaintiff's protected class were similarly situated to him . . . Plaintiff cannot indirectly demonstrate an inference of discrimination and therefore cannot make out a prima facie case of . . . discrimination." <u>Ferraro</u>, 2017 U.S. Dist. LEXIS 161799, at *40.

Finally, Defendant Suss and almost all other major claimed "bad actors" are also Jewish, further destabilizing Plaintiff's attempt at creating an inference of discrimination. <u>See</u>

19

Defs. 56.1 ¶¶ 7, 19, 33, 112; see also Renz v. Grey Advertising Co., 135 F.3d 217, 224 (2d Cir. 1997); Walder, 738 F. Supp. 3d at 483.

### iii.   Lack of Qualifications for Promotion

This Court gives considerable deference to an employer's determination of what qualifications are essential to perform a certain job, as well as respecting an employer's "unfettered discretion to choose among qualified candidates." See Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001); D'Amico v. City of New York, 132 F.3d 145, 151 (2d Cir. 1998). "When a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer . . . the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." Byrnie, 243 F.3d at 103. Here, in regard to Plaintiff's failure to promote claims, Plaintiff has provided no evidence of qualifications, much less superior qualifications, for either the Director of eLearning position or the post of Provost. See Defs. 56.1 ¶¶ 84-87, 100. Accordingly, Plaintiff has not met his prima facie burden of proving that he was sufficiently qualified for the positions he sought.

As Plaintiff cannot carry his prima facie burden of establishing a sufficiently adverse act which a jury could reasonably believe was motivated by discriminatory intent, Plaintiff's disparate treatment claims must be dismissed as a matter of law.

### C.  Hostile Work Environment Claims

This Court has noted that a plaintiff alleging a hostile work environment claim under Title VII and the SHRL "must plead facts that tend to show that the complained-of conduct: (1) is objectively severe or pervasive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates an environment that is

discriminatorily hostile or abusive to the plaintiff because of the plaintiff[']s membership in a protected class." Guy v. MTA N.Y. City Transit, No. 15 Civ. 2017 (LDH), 2016 U.S. Dist. LEXIS, 130919, at *22 (E.D.N.Y. Sept. 23, 2016) (citing Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007)). When reviewing hostile work environment allegations, the Court "must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Littlejohn, 795 F.3d at 321 (internal citations omitted). In order to be "pervasive," the record must reflect incidents that are "sufficiently continuous and concerted." Id. Here, the record does not support that a severe and pervasive hostile work environment existed, much less that Plaintiff himself experienced it.

Crucially, a plaintiff alleging hostile work environment claims must actually experience it for the claim to be viable. As the Second Circuit wrote regarding the plaintiff in Leibovitz v. N.Y.C. Transit Auth., 252 F.3d 179, 182 (2d Cir. 2001):

> Her claim rests on emotional trauma allegedly suffered due to her belief that other women in other parts of her workplace were harassed and that the defendant was not vigorously investigating those complaints. We hold that Title VII's prohibition against hostile work environment discrimination affords no claim to a person who experiences it by hearsay.

Id. Plaintiff cannot posit a hostile work environment claim on statements allegedly uttered by a defendant but never personally experienced by Plaintiff. See Montague v. Sodexco, Inc., No. 15 Civ. 972, 2017 U.S. Dist. LEXIS 165968, at *48-51 (D. Conn. Oct. 6, 2017) (citing Leibovitz, 252 F.3d at 189); Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 356 (S.D.N.Y.2006); see also Early v. Wyeth Pharms., Inc., 603 F. Supp. 2d 556, 579 (S.D.N.Y. 2009) (noting that plaintiff could not rely on others' hearsay statements to support her hostile work environment claim).

Plaintiff recites a laundry list of other employees' interactions with perceived hostility, but fails to make a substantial showing that could create a genuine issue as to whether such conduct was subjectively and objectively severe to him. The record establishes that, despite Plaintiff's unsupported allegations that Suss made various undated comments about there being "too many Jews" at KCC, Suss never made such comments to Plaintiff or in Plaintiff's presence. See Defs. 56.1 ¶¶ 147-51. Additionally, Plaintiff relies upon a second unsubstantiated layer of hearsay, as the people from whom Plaintiff allegedly heard about Suss's statements did not themselves hear it from Suss. See Carter Decl., Exhibit "B," Pl. Tr. At 259:24, 260:11 (describing that neither Yarmish nor Michael Goldstein heard Suss directly say there were "too many Jews"). These stray remarks – unsupported by any admissible evidence – cannot subject Defendants to liability for a hostile work environment. See Kamrowski v. Morrison Mgmt. Specialist, No. 05 Civ. 9234, 2010 U.S. Dist. LEXIS 103290, at *50-51 (S.D.N.Y. Sept. 29, 2010) ("District courts within the Second Circuit have been . . . reluctant to accept a prima facie case of a hostile work environment based on harassment experienced by a third party." (citing, e.g., Byra-Grzegorczyk v. Bristol-Myers Squibb Co., 572 F. Supp. 2d 233, 248 (D. Conn. 2008); Pronin v. Raffi Custom Photo Lab, Inc., 383 F. Supp. 2d 628, 635 (S.D.N.Y. 2005))).

Although the record does not support his contentions, Plaintiff also attempts to construe KCC's alleged "failure to investigate" incidents of anti-Semitism on campus as creating a hostile work environment. See Defs. 56.1 ¶¶ 155-63. This theory must also fail. See Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 724 (2d Cir. 2010) ("[T]he failure to investigate did not by itself alter the terms and conditions of [plaintiff's] employment; rather, it preserved the very circumstances that were the subject of the complaint. Therefore the failure to investigate [plaintiff's] complaint could not itself have contributed to or constituted a hostile

22

work environment."). As with the alleged comments from Suss about "too many Jews," Plaintiff did not personally experience these incidents and therefore, even if they were admissible, could not use them as the primary basis for his own hostile environment claim. See Defs. 56.1 ¶ 156 (acknowledging that Plaintiff was not personally familiar with the alleged desecration of an Israeli flag); id. ¶ 157 (recounting that at some unspecified time, a Jewish faculty member's car was vandalized in a parking lot); id. ¶ 161 (contending that Plaintiff heard via hearsay from a third party that a faculty member had a swastika etched into her desk). Plaintiff admits that he does not attribute any of this alleged vandalism to Suss. See id.  ¶ 163. Further, Plaintiff cannot claim that he directly experienced Taras's alleged failure to hire retired Jewish professors as adjuncts in her separate Department – claims that are also time-barred. See id. ¶¶ 120-31.

Similarly irrelevant to a hostile work environment analysis is Plaintiff's claim that KCC removed "religion" as a protected characteristic, and that Suss was the force behind this removal. See id. ¶ 171. To the contrary, the record indicates that "religion" was never listed in the affirmative action statement KCC adds to all job postings because KCC uses CUNY-approved affirmative action language based on federal requirements. See id. ¶¶ 171-75; see generally Chamberlain Decl. Even if Suss or KCC had somehow removed "religion" as a protected characteristic, such a removal would be facially neutral and would not implicate Judaism over any other religion. Cf. Maresco v. Evans Chemetics, 964 F.2d 106, 115 (2d Cir. 1992) (noting that disparate impact claims cannot be disguised as disparate treatment claims).

Plaintiff cannot carry his prima facie burden of establishing that he himself experienced a severe and pervasive hostile work environment, and his claims should be dismissed.

**D.  Retaliation Claims**

To establish a prima facie case of retaliation, Plaintiff must show: "(1) participation in a protected activity; (2) that the defendant[s] knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010). Like his discrimination and hostile work environment claims, Plaintiff's retaliation claims must fail.

### i.   **Insufficiency of Protected Activities**

Plaintiff identifies four dates on which he allegedly engaged in protected activity: (1) March 17, 2014, (2) June 3, 2014, (3) May 11, 2015, and (4) October 23, 2015. See Am. Compl. ¶¶ 110, 114, 117, 120. Defendants will address each incident in turn.

On March 17, 2014, Plaintiff contends, he told KCC's Legal Counsel, Julie Block-Rosen, that Suss was discriminating against him due to his religion. Documentary evidence shows that religion was not the basis of Plaintiff's informal complaints to Block-Rosen; instead, Plaintiff was angry that she was "refusing to speak with him" about his belief that "the president was retaliating against [him] for the grievance on which [he] prevailed from last May [regarding the promotion to Professor]." See Carter Decl., Exhibit "Y." While retaliation over a grievance may be actionable, a reasonable jury could only conclude that neither the grievance in question, nor Plaintiff's March 2014 complaint, had anything to do with religious discrimination by Suss. See Castagna v. Luceno, No. 09 Civ. 9332, 2011 U.S. Dist. LEXIS 45567, at *34 (S.D.N.Y. Apr. 26, 2011) ("[T]he protected activity alleged must involve some sort of complaint about a type of discrimination that Title VII forbids."). Further, any adverse actions resulting from this March 2014 complaint are time-barred. See infra.

Plaintiff contends that he informally complained of religious discrimination on June 3, 2014. Allegations accruing from this alleged complaint are time-barred. See infra. In any event the record does not indicate that Plaintiff made a complaint to then-Acting Provost David

24

Gomez regarding religious discrimination by Suss; instead, the record reflects that Plaintiff called Suss an "anti-Semite" to Gomez around October 2013. See Defs. 56.1 ¶ 182; Stark Decl., Exhibit "12," at 52:8 – 53:22. The record also establishes that when Gomez asked Lax for details that might transform his statement into a cognizable complaint, Lax offered none. Id.

Third, Plaintiff contends that he engaged in protected activity on May 11, 2015, during a conversation with CUNY's Director of HR Investigations, Pinar Ozgu. See Defs. 56.1 ¶¶ 184-90. The record reflects that, although Lax and Ozgu spoke on May 11, 2015, Plaintiff consciously chose not to file a complaint on that date or soon thereafter because Plaintiff asserted that Ozgu could not be impartial as she had recently issued an adverse finding of retaliation against Plaintiff. See id. Plaintiff was explicitly provided the opportunity to file a formal complaint in May 2014, but chose not to do so. See id.; see also Carter Decl., Exhibit "Z." Accordingly, nothing listed above can be adequately considered protected activity for religious discrimination purposes.

Plaintiff did engage in a protected activity when, on October 23, 2015, he filed a complaint with KCC's Chief Diversity Officer, alleging that Block-Rosen had retaliated against him. See id. ¶¶ 191, 193; see also Carter Decl., Exhibit "AA." But, this complaint did not involve allegations against Suss, and it did not involve religious discrimination. See Carter Decl., Exhibit "AA" (noting that the complaint claimed "retaliation" and "ethical misconduct," but did not check the box for "religion/creed" discrimination). See Castagna, 2011 U.S. Dist. LEXIS 45567 at *34. Accordingly, this complaint cannot serve as the basis for religious discrimination-based retaliation by Defendants.

### ii.    Insufficiency of Certain "Adverse Actions"

For an employment action to be retaliatory, it must be of a character likely to dissuade "a reasonable worker from making or supporting a charge of discrimination."

Burlington Northern & Sante Fe Ry. Co. v. White, 548 U.S. 53 (2006). While the standard for adverse actions is broader for claims of retaliation than discrimination, Plaintiff's frustrations about not being afforded legal counsel, not being assigned to all of the committees he viewed as sufficiently elite, and not being given a less lucrative position, still do not constitute retaliation-based adverse employment actions. See Hicks, 593 F.3d at 165 (noting that plaintiff must demonstrate some "injury or harm" to show adverse action under Burlington). Other than Plaintiff's failure to promote claim regarding the Provost search, the record does not indicate any actions taken against Plaintiff within a temporally proximate period that might have "dissuaded" him from making a charge of discrimination.

### iii.   Failure to Show Causal Relationship

"A plaintiff can establish the causal connection between protected expression and an adverse employment determination indirectly by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." Howard v. City of New York, 602 F. App'x 545, 549 (2d Cir. 2015) (quoting Cobb v. Pozzi, 363 F.3d 89, 108 (2d Cir. 2004)). "[P]laintiffs may not rely on conclusory assertions of retaliatory motive, but must offer instead some tangible proof to demonstrate that their version of what occurred was not imaginary." Morris v. Lindau, 196 F.3d 102, 111 (2d Cir. 1999). An indirect causal connection may be established if Plaintiff shows that the protected speech "was closely followed in time by the adverse action." See Howard, 602 F. App'x at 549 (internal citation omitted). Temporal proximity is measured from the date of the "employer's knowledge of [the] protected activity." See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001); accord Nagle, 663 F. 3d at 110-11. Further, while there is no "bright line" defining precisely when a causal connection becomes attenuated, the timing must be "very close" and three to four months between the activity and the action obviates a sufficient inference of causation. See Breeden, 532

U.S. at 273 (referencing cases in which retaliation claims were dismissed for lack of temporal proximity due to a three or four month interval); Galimore v. City Univ. of N.Y. Bronx Cmty. Coll., 641 F. Supp. 2d 269, 288 (S.D.N.Y. 2009) (citation omitted)).

Even assuming a protected activity, temporal proximity cannot create an inference of retaliation for Plaintiff's alleged May 11, 2015 "complaint." No specific employment actions occurred thereafter with temporal proximity to Plaintiff's earlier complaints. See, e.g., Breeden, 532 U.S. at 273; Galimore, 641 F. Supp. 2d at 288. Similarly, turning to Plaintiff's October 23, 2015 Complaint, Plaintiff has failed to show that any adverse action was temporally proximity to create an inference of retaliation. The record does not reflect that Plaintiff's October 23, 2015 complaint came *before* the Provost Search Committee decided to reject his application, and Plaintiff cannot show that his rejected application was proximate in timing to an earlier-filed complaint.

Accordingly, as Plaintiff has not alleged a sufficient causal nexus between any protected conduct and any acts of retaliation, summary judgment is appropriate.

### E. Defendants Have Articulated Legitimate, Non-Discriminatory, Non-Retaliatory Reasons for Their Actions That Are Not False or Pretextual.

Even if Plaintiff could establish a prima facie case of discrimination or retaliation, Defendants have legitimate, non-discriminatory, non-retaliatory reasons for their actions. Defendants bear a minimal burden in articulating a legitimate reason. See Fisher v. Vassar Coll., 114 F.3d 1332, 1335 (2d Cir. 1997), cert. denied, 522 U.S. 1075 (1998) ("Any legitimate, non-discriminatory reason will rebut the presumption triggered by the prima facie case."). Indeed, "[i]f the defendant articulates a non-discriminatory reason, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity." Id. at 1336

27

(internal citation omitted). Here, the record establishes legitimate, non-pretextual business reasons for each act addressed by Plaintiff.

First, as to Plaintiff's non-promotion to Professor in May 2013, the record amply establishes that: (1) unlike all nine of the applicants who were promoted to Professor in May 2013 by the College-Wide P&B, Plaintiff did not receive a favorable recommendation from the underlying Review Sub-Committee, which reviews applicants' materials prior to the College-Wide P&B vote. Plaintiff received a unanimously negative 0-5 vote against his promotion (see Defs. 56.1 ¶¶ 34-38, 42, 51-52, 54-56); and (2) the College-Wide P&B, acting upon the Review Sub-Committee's unfavorable recommendation, also noted Plaintiff's "length of time in service" and "addendum to law journal" in their meeting notes as additional reasons discussed for Plaintiff's non-promotion. See id. ¶ 58.

Second, the individual appointed to serve as Director of eLearning position, Taras, had worked extensively on KCC's eLearning programs through a challenging accreditation process. That process led to the decision to appoint a Director of eLearning and the request that Taras take on that responsibility. See id. ¶¶ 84-87; Taras Decl. ¶¶ 2-3, 14. By virtue of her work, Taras was highly qualified to supervise eLearning, and nothing in Plaintiff's work history reflects equivalent experience.

Third, regarding Plaintiff's Spring 2014 request for a discretionary salary increase, the record reflects that Plaintiff was properly paid according to his time in service under the collective bargaining agreement. See id. ¶¶ 74-76. Discretionary pay increases were not justified absent special circumstances, and no special circumstance existed here. Plaintiff identifies only one Chair who received a discretionary raise: Anthony Borgese, who received a raise to dissuade him from taking another school's employment offer. See id. ¶¶ 77-80.

28

Fourth, Plaintiff complains that he was not the successful candidate in the 2015 search for a Provost, KCC's chief academic officer. The Provost Search Committee reviewed 97 applications and selected only 9 individuals for in-person interviews. See id. ¶¶ 95-99.  Based on applications, the search committee chose 9 well qualified candidates and did not choose Plaintiff and 87 others. See id. The Search Committee proceeded in a neutral, non-discriminatory manner, and at least one of those invited for an interview was Jewish. Id. Plaintiff offers no evidence that he was a well-qualified as those who were interviewed and does not suggest that he had qualifications equivalent to those of the successful candidate, who had more than 20 years of higher education administrative experience, including prior service as a chief academic officer.

Fifth, regarding Plaintiff's claims that he was "denied legal counsel" in conjunction with an internal complaint filed against him, KCC's Legal Counsel does not provide legal assistance for Department Chairs in response to internal complaints as a matter of course. See id. ¶¶ 101, 105-08. Plaintiff again cites to Borgese as someone who was treated differently, but Borgese was provided legal assistance only when he became a defendant in a federal lawsuit; the situations are not analogous. See id.

Plaintiff lacks any credible evidence to show that Defendants' legitimate reasons are false and that the allegedly false reasons are being used as pretext to mask discrimination. See Fisher, 114 F.3d. at 1337-38; see also Tomasino v. St. John's Univ., 476 F. App'x 923, 925 (2d Cir. 2012). Accordingly, the discrimination and retaliation claims should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court grant their motion for summary judgment in its entirety and deny the relief requested by Plaintiff, together with costs and such other and further relief as this Court deems just and proper.

Dated:        New York, New York
              June 11, 2018

                              **ZACHARY W. CARTER**
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendants
                              100 Church Street, Room 2-102
                              New York, New York 10007
                              (212) 356-2078

                              By:    _____/s/_____
                                          John Corbin Carter
                                        Assistant Corporation Counsel

Maxwell D. Leighton,
John Corbin Carter,
  Of Counsel.

30