UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JEFFREY LAX,

                                 Plaintiff,

                  v.

THE CITY UNIVERSITY OF NEW YORK AND
STUART SUSS,

                                 Defendants.

**MEMORANDUM AND ORDER**
16-CV-799 (LDH) (VMS)

---

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

Plaintiff Jeffrey Lax brings the instant action against his former employer, the City University of New York ("CUNY") and Stuart Suss (collectively, "Defendants") asserting claims for retaliation, discrimination, and hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"); 42 U.S.C. § 1983; New York State Human Rights Law ("NYSHRL"); and New York City Human Rights Law ("NYCHRL"). Defendants move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on all claims.

## UNDISPUTED FACTS[1]

Plaintiff, who identifies as an "Orthodox, obvious, or outward Jew" began his employment with CUNY in September 2004 as an Assistant Professor at Kingsborough

---

[1] The following facts are undisputed unless otherwise noted. The Court notes that Plaintiff alleges other discriminatory acts not discussed here because they are time-barred.
    The Court further notes that Defendants improperly rely on allegations in the amended complaint to support the facts asserted in their 56.1 statement. (*See e.g.*, Pl's Resp. 56.1 ¶¶ 72, 73, 81, 92, 101, 109-11, 125, 139, 145, 146, 149, 155, 157, 164, 166, 176, and 179.) These facts are an improper attempt to convert allegations from Plaintiff's unverified complaint into evidence. Local Rule 56.1(d) provides that: "Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible." Loc. Civ. R. 56.1(d). *See also Bentivegna v. People's United Bank*, 14-CV-599, 2017 WL 3394601, at *13 (E.D.N.Y. Aug. 7, 2017) ("[A]n unverified complaint is not admissible evidence."); *see also Continental Ins. Co. v. Atlantic Cas. Ins. Co.*, 07-CV-3635, 2009 WL 1564144, at *1 n.1 (S.D.N.Y. Jun. 4, 2009) (finding that on a motion for summary judgment "allegations in

Community College ("Kingsborough"). (Pl.'s Resp. Rule 56.1 Statement ("Pl.'s Resp. 56.1") ¶¶ 1–3, ECF No. 41.) Plaintiff obtained tenure at Kingsborough in 2009. (*Id.* ¶ 3.) In May 2010, Plaintiff was promoted to associate professor in Kingsborough's Business Department. (*Id.* ¶ 4.) Later, in January 2011, Plaintiff was appointed chair of that department. (*Id.* ¶ 10.) Suss was vice president of academic affairs and provost at Kingsborough from 1999 through his retirement in September 2015, except for a brief period from September 2013 through July 2014, during which time he served as Interim Acting President. (*Id.* ¶ 5.)

In early 2013, Plaintiff sought a promotion from associate professor to professor. (*Id.* ¶ 40.) Faculty promotions at Kingsborough proceed through two Personnel and Budget ("P&B") Committees and a Sub-Committee on Promotion ("Review Subcommittee"). (*Id.* ¶ 34.) The first P&B Committee is the Department Level P&B Committee, which is comprised of departmental faculty members and chaired by the department chair. (*Id.* ¶ 35.) The second P&B Committee is the College-Wide P&B Committee, which is comprised of all Kingsborough department chairs as well as the provost, and typically includes approximately 15 members. (*Id.* ¶ 36.) The Department Level P&B Committee reviews applicant materials and makes a recommendation to the Review Subcommittee, which in turn makes a recommendation to the College-Wide P&B Committee. (*Id.* ¶ 37.) The College-Wide P&B Committee then reviews the recommendation and the applicant's file, and votes on promotion. (*Id.* ¶ 38.) As department

---

an unverified complaint cannot be considered as evidence.") (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)). The Court has therefore disregarded these unsupported facts accordingly.
   Additionally, Plaintiff failed to submit a separate Rule 56.1 statement setting forth his material facts, which would provide Defendants an opportunity to dispute them accordingly.

2

chair, Plaintiff served on both the Departmental Level and College-Wide P&B Committees.  (*Id.* ¶ 39.)

On May 23, 2013, the College-Wide P&B Committee held votes on the candidacy of fourteen associate professors, including Plaintiff.  (*Id.* ¶¶ 43–44.)  Of the fourteen associate professors considered, nine were promoted to professor, effective September 2013.  (*Id.* ¶ 51.)  Among those promoted was Elie Feder, who identifies as Jewish and wears a yarmulke, a traditional Jewish skull cap.[2]  (*Id.* ¶¶ 52–53.)  Each of the candidates promoted to professor received unanimously positive reviews by the Review Subcommittee.  (*Id.* ¶ 52.)  All five of the candidates who were not promoted received unanimously negative reviews from the Review Subcommittee.  (*Id.* ¶ 56.)  Plaintiff was among the five candidates not selected for promotion.  (*See id.* ¶ 55.)  In his capacity as provost, Suss voted in favor of Plaintiff's promotion to associate professor.  (*Id.* ¶ 8.)

Notably, associate professors were not permitted to cast votes at the May 2013 meeting.  (*Id.* ¶ 46.)  Instead, and in contravention of CUNY's policy, only Review Subcommittee members who held a professorship were permitted to vote.  (*Id.* ¶ 45.)  After a complaint by the Professional Staff Congress, it was settled that the Review Subcommittee would hold a revote on the five candidates not selected for promotion at the May 2013 meeting.  (*Id.* ¶¶ 61, 68.)  Upon a revote, on October 23, 2013, Plaintiff was promoted to professor.  (*Id.* ¶ 69.)  The effective date

---

[2] *See* Dictionary.com, "yarmulke," https://www.dictionary.com/browse/yarmulke?s=t (last visited July 29, 2020) ("a skullcap worn, especially during prayer and religious study, by Jewish males, especially those adhering to Orthodox or Conservative tradition.").

of his promotion was made retroactive to September 2013, consistent with the promotions voted upon at the May 2013 meeting. (*Id.* ¶¶ 68, 69.)

In December 2013, Anna Geller, another faculty member at Kingsborough, filed an EEO complaint against Plaintiff, alleging that he had both discriminated and retaliated against her. (*Id.* ¶ 23.) After an internal investigation, CUNY determined that Plaintiff had not discriminated against Geller, but had retaliated against her. (*Id.* ¶ 24.) Plaintiff maintains that Kingsborough's legal counsel, Julie Block-Rosen, refused to provide him with legal advice in connection with Gellar's complaint. (*Id.*)

On May 11, 2015, Plaintiff orally complained to CUNY's Chief Diversity Officer, Pinar Ozgu, that he believed Suss was discriminating against him. (*Id.* ¶ 185.) Ozgu responded by asking if Plaintiff wished to file a complaint. (*Id.* ¶ 186.) Plaintiff maintains that in so doing, Ozgu violated Kingsborough's policy which, according to Plaintiff, requires that an investigation be commenced when any discrimination or retaliation complaint is received. (*Id*; *see also* Jan. 16, 2018 Decl. Corey Stark ("Stark Decl."), Ex. 4 at 59–60, ECF No. 42-4.) The parties dispute whether any complaint was filed on May 11, 2015. Defendants maintain that no complaint was filed on May 11, 2015, and that Plaintiff eventually elected not to file a complaint regarding his allegations "because he did not believe Ozgu could be impartial" following the conclusion of the Gellar investigation. (Pl.'s Resp. 56.1. ¶¶ 187, 190; *see also* Dec. 20, 2017 Decl. John Corbin Carter ("Carter Decl."), Ex. B ("Pl.'s Dep. Tr.")521:24–522:1, 39-2.) In contrast, Plaintiff avers that he made a complaint on May 11, 2015; "confirmed in writing to Ozgu that he wanted to proceed with the complaint;" and later filed a grievance with his union "because Ozgu did not

4

pursue any investigation into his complaints whatsoever." (Pl.'s Resp. 56 ¶¶ 187, 190; *see also* Stark Decl., Ex. 1 at 519:18–23; Stark Decl. Ex. 16; Carter Decl. Ex. Z.)

On August 4, 2015, Plaintiff filed a charge of employment discrimination with the EEOC. (Pl.'s Resp. 56 ¶ 25.) According to Plaintiff, he filed multiple other internal complaints of discrimination with CUNY at some point prior to initiating a charge with the EEOC. (*Id*.) In September 2015, Plaintiff was denied a promotion to Director of eLearning, a position created by the Kingsborough administration in 2015 and given to Loretta Taras. (*Id*. ¶¶ 81–83.) Later, in November 2015, Plaintiff sought and was denied appointment to provost following Suss's retirement from that position. (*Id*. ¶ 92.) The provost search committee reviewed 97 applications, including Plaintiff's, and selected 9 individuals for in-person interviews. (*Id*. ¶ 96.) Plaintiff was not among the 9 individuals selected for an interview, however, at least one person who identified as Jewish was among those so selected. (*Id*. ¶¶ 97–98.)

Plaintiff identifies four instances where he purports to have engaged in protected activity resulting in retaliation—a March 2014 complaint to Block-Rosen; a May 11, 2015 complaint to Pinar Ozgu and an August 4, 2015 EEOC Charge; and a June 2014 complaint to Gomez.[3] (*Id*. ¶¶ 24, 26, 183–184.)

### STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s] [are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). A genuine dispute of material fact exists when the evidence as to a fact that might affect the suit's outcome is such that

---

[3] For the reasons previously set out, any potential Title VII retaliation cause of action premised on the March 17, 2014 and June 3, 2014 complaints is time-barred.

a reasonable jury could find in favor of the non-movant at trial. *Anderson*, 477 U.S. at 248. At summary judgment, the movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Once the movants meet that burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *see also Anderson*, 477 U.S. at 248; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to view all such facts in the light most favorable to the non-movant, drawing all reasonable inferences in his favor. *Anderson*, 477 U.S. at 255. Still, to survive summary judgment, a non-movant must present concrete evidence and may not rely on mere conclusory or speculative claims or denials. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980) ("The litigant opposing summary judgment, therefore, 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial." (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978))).

## DISCUSSION

### I.     Timeliness of Claims Under Title VII and Section 1983

"For a Title VII claim arising in New York to be timely, a plaintiff must file [his] charge with the [EEOC] within 300 days of the allegedly unlawful employment practice." *Baroor v. New York City Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010). Here, Plaintiff filed his charge of employment discrimination with the EEOC on August 4, 2015. (Pl's Resp. 56.1 ¶ 26.) Therefore, absent an applicable exception, any discriminatory conduct that occurred before October 8, 2014 is barred by the statute of limitations. On this basis, any Title VII claim predicated on Defendants' failure to promote Plaintiff at the May 2013 meeting; Defendants'

denial of Plaintiff's pre-October 2014 requests to serve on certain academic committees; Defendants' denial of Plaintiff's March 2014 request for a compensation increase; Plaintiff's complaints of religious discrimination to Julie Block-Rosen in March of 2014; Plaintiff's June 3, 2014 complaint to Interim Provost David Gomez that Plaintiff was offended when Suss spoke to him in Yiddish; and Plaintiff's complaint to Interim Provost David Gomez in September 2014 that Suss was an "anti-semite," are presumably time-barred.

  Notwithstanding, Plaintiff argues that all of his Title VII claims are timely because the continuing-violation doctrine extends the limitations period to the alleged discriminatory conduct that occurred prior to the limitations cut-off in this case. (Pl.'s Mem. L. Opp'n Defs.' Mot. Summ. J. ("Pl.'s Opp'n") 2, ECF No. 64.) Not so. In *National R.R.*, the Supreme Court explained that the continuing-violation doctrine is inapplicable to discrete discriminatory acts. *See generally Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Of particular relevance here, the Supreme Court noted that "discrete discriminatory acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." *Id*. at 115. Plaintiff's claims fall into this category.

  In an effort to persuade the Court to apply the continuing-violation doctrine, Plaintiff cast Defendants' conduct as part of an elaborate scheme to discriminate against Orthodox Jewish faculty. (Pl.'s Opp'n 3.) Specifically, Plaintiff argues that "Defendants' conduct shows a pattern of unremedied discrimination and retaliation, the purpose of which was undeniably to marginalize and ultimately eliminate Orthodox Jews from Kingsborough . . . ." (*Id*.) In support of this contention, Plaintiff directs the Court to a host of conduct both related and unrelated to Plaintiff that he maintains evinces Defendants' discriminatory "pattern." (*Id*. 3–4.) Among other things, Plaintiff highlights that Defendants refused to hire Jewish candidates who were

7

unanimously selected by department committees, prevented certain faculty members from voting on promotion decisions, and declined to assign Jewish faculty to committees. (*Id*. 3.) Even assuming these charges are true, they cannot revive Plaintiffs' untimely claims. That is "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113.[4]

Unlike Title VII claims, claims brought under Section 1983 are governed by a three-year statute of limitations. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015). Plaintiff commenced this action on February 16, 2016. (ECF No. 1.) Therefore, only claims for discrimination based on conduct that occurred prior to February 16, 2013, are time-barred for the purposes of the Court's analysis of Plaintiff's Section 1983 claims.[5] In other words, Plaintiff may rightfully rely on any alleged discriminatory conduct that occurred on or after February 16, 2013, to support his Section 1983 claims—even conduct that is time-barred under Title VII.

## II.    Claims for Discrimination, Hostile Work Environment, and Retaliation

Plaintiff presses several claims of discrimination under two similar, but distinct statutes—Title VII and Section 1983. As background, Title VII was enacted to eradicate discriminatory employment practices by "eliminating those practices and devices that discriminate on the basis

---

[4] Moreover, it should not go without noting that much of the conduct on which Plaintiff relies in support of this argument is untethered to an adverse employment action, or so amorphous that the Court cannot discern the specific complained of conduct. (*See generally* Pl.'s Opp'n 2–5.)

[5] On this point, Defendants specifically refer to Plaintiff's complaint concerning the "reversal of the Personnel & Budget Committee decision to not reappoint faculty member Ana Gellar, 2011 decision not to hire Dov Fisher, and discrimination against retired Jewish faculty members." (Defs.' Mem. L. Supp. Mot. Summ. J. ("Def Mem.") 4, ECF No. 62.) The Court, however, does not construe this alleged conduct as providing a basis for a discrimination claim by Plaintiff, as none of the allegations involve a purportedly discriminatory act against Plaintiff. The Court construes these allegations, instead, as allegations that Plaintiff has included in an effort to demonstrate a custom or policy by CUNY in support of his *Monell* claim. But, to remove all doubt, to the extent that Plaintiff had intended for these allegations to provide a basis for a claim by him, the Court finds that they are time-barred.

of race, color, religion, sex, or national origin." *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 457 (1975). Title VII, therefore, "creates statutory rights against invidious discrimination in employment and establishes a comprehensive scheme for the vindication of those rights." *Id*. at 457–58. Section 1983, in contrast, creates no substantive rights itself, but provides a vehicle through which individuals may pursue remedies for any violation of rights granted to them under federal law—including those related to discrimination. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Notably, with a few exceptions not relevant here, the elements of a discrimination claim raised under either statute are nearly indistinguishable. *Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996) ("[W]hen § 1983 is used as a parallel remedy with Title VII in a discrimination suit, as it is here, the elements of the substantive cause of action are the same under both statutes."). Thus, as detailed more fully below, the standard under which the Court assesses Plaintiff's claims under both statutes is the same.

### A. Discrimination

To establish a prima facie case of discrimination for failure to promote or hire, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was sufficiently qualified for a position or was otherwise deserving of an employment benefit; (3) he suffered a sufficiently adverse action; and (4) the action occurred under circumstances giving rise to an inference of discrimination. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "Once an employee makes a prima facie case . . . the burden shifts to the employer to give a legitimate, non-discriminatory reason for its action." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014).

#### 1. Failure to Promote Plaintiff to Professor at the May 2013 meeting

Plaintiff seeks to hold Defendants liable for their failure to promote him to professor at a

May 2013 meeting. (Pl.'s Opp'n 16.) In seeking dismissal, Defendants argue that the denial of Plaintiff's promotion at the May 2013 meeting does not constitute an adverse employment action under the facts of this case. (Defs.' Mem. 15.) To be deemed an adverse employment action, "the alleged conduct must materially alter the terms and conditions of employment." *Kairam v. W. Side GI, LLC*, 793 F. App'x 23, 27 (2d Cir. 2019) (citation omitted). Certainly, the denial of a promotion would typically qualify as an adverse employment action. *Mills v. S. Connecticut State Univ.*, 519 F. App'x 73, 75 (2d Cir. 2013) (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir.2002) ("[T]he alleged failure to promote . . . constitutes an adverse employment action.") (citation omitted). On the facts of this case, it's not so clear cut. Here, however, Plaintiff was initially denied a promotion to professor by a vote of the Collegewide P&B Committee in May 2013. (Pl's Resp. 56.1 ¶¶ 43, 51.) But, after a challenge to the validity of the May vote, a revote was held, and Plaintiff was granted his promotion. (*Id.* ¶ 69.) Significantly, the effective date of Plaintiff's promotion was made retroactive to September 2013, the same effective date as those who were promoted in May 2013. (*Id.*) Thus, according to Defendants, it follows that the terms and conditions of Plaintiff's employment were not materially adversely affected by the initial vote. (Defs.' Mem. 15.)

Plaintiff maintains that the fact that CUNY remedied the adverse employment action cannot shield Defendants from liability for having taken it in the first place. (*See* Pl.'s Opp. 17.) This argument has some appeal. Theoretically, Plaintiff was the subject of an adverse employment action at least until October 2013 when the revote was cast. Assuming that Plaintiff has made out a prima case for discrimination, Defendants have sufficiently demonstrated that they had a legitimate, nondiscriminatory reason for failing to promote Plaintiff in May 2013.

At the May 2013 meeting of the College Wide P&B Committee, fourteen candidates

10

were considered for promotion. (Pl's Resp. 56.1 at ¶ 43.) Nine candidates, each of whom received unanimously positive reviews, were promoted. (*Id.* ¶ 51.) It is undisputed that Plaintiff, and the four other candidates who were not selected for promotion in May, received unanimously negative reviews from the Review Subcommittee. (*Id.* ¶ 56.)

Presumably, in an effort to show that this reason is nothing more than pretext, Plaintiff makes much of the fact that, at the May 2013 meeting, in contravention of CUNY policy, associate professors were denied the right to vote on the fourteen candidacies for promotion. (Pl.'s Opp'n 16.) Plaintiff asserts that associate professors were denied the right to vote as part of the larger "scheme" to prevent Jewish faculty members from receiving promotions. (*Id.*) Plaintiff fails, however, to adduce any evidence that might support this theory or explain how the exclusion of associate professors operated in furtherance of this "scheme." Plaintiff does not, for example, offer evidence that the associate professors were more inclined to vote for outward or Orthodox Jewish candidates, or that professors were less inclined to vote for outward or Orthodox Jewish candidates. Moreover, there is no evidence in the record that any of the associate professors, other than Plaintiff, who were excluded from voting were themselves Orthodox Jewish. In other words, Plaintiff has not overcome Defendant's legitimate basis for denying Plaintiff a promotion in May 2013.

        2.       Failure to Promote Plaintiff to Provost or Director of Learning

In his complaint, Plaintiff pressed a claim of discrimination based on Defendants' failure to promote him to provost or director of learning. Defendants argued for the dismissal of these claims. (Defs.' Mem. 15–16, 18.) Plaintiff failed to oppose Defendants' arguments on these claims thereby rendering them abandoned as a matter of law. *Jackson v. Federal Express*, 766 F.3d 189, 195–96 (2d Cir. 2014) ("[A] partial response arguing that summary judgment should

be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims . . . Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended.") In any event, even if Plaintiff had not abandoned these claims, they too would fail on the merits.

As Defendants aptly note, (Defs.' Reply Mem. L. Supp. Mot. Summ. J. ("Defs.' Reply") 6–7, ECF No. 65.), Plaintiff has failed to adduce any evidence that he was qualified for either position. Indeed, even a searching review of Plaintiff's 56.1 statement fails to unearth any fact that might demonstrate Plaintiff's qualifications for these positions. Plaintiff's claim must therefore fail.[6] *See Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) ("When a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer . . . the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.").

        3.      Denial of a Compensation Increase.

Plaintiff has made a showing that he suffered an adverse employment action based on Defendants' denial of the discretionary step increase, Plaintiff has made a showing that he suffered an adverse employment action. (Pl.'s Opp'n 19.) However, he has again failed to adduce sufficient evidence to show that the denial occurred under circumstances giving rise to an

---

[6] Plaintiff seems to misunderstand his burden here. Plaintiff claims he is not seeking to compare himself to other individuals that were hired for the positions he sought. (*See* Pl.'s Resp. 56.1 ¶ 100.) That fact is clear from his submission. But, Plaintiff's argument ignores the fact that he is obligated to establish that he is qualified for the position for which he sought but was denied. As discussed above, he has failed to do so.

inference of discrimination. To do so, Plaintiff may rely on direct evidence of discriminatory intent such as negative statements made regarding Plaintiff's religion. *Watson v. Richmond Univ. Med. Ctr.*, 408 F. Supp. 3d 249, 262 (E.D.N.Y. 2019) (citing *Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir. 1984). He has offered none sufficient to support his claim. Alternatively, Plaintiff may offer evidence of indirect discrimination by way of comparators. That is, Plaintiff may establish an inference of discrimination where he can demonstrate that someone outside of his protected class who is similarly-situated to him was treated differently or, in this case, received the step increase. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) (citation omitted) (stating that "an inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to . . . the more favorable treatment of employees not in the protected group."). Plaintiff has served up Andre Borges, Michael Wiesberg and Harold Connolly. (Pl.'s Opp'n 20.) None are adequate comparators.

     As a starting point, Plaintiff maintains that Borgese, Weisberg, and Connolly are each outside of his protected class because none of them is an "Orthodox or obvious Jew." (Pl.'s Opp'n 20.) However, Plaintiff offers zero evidence concerning the religious identity of any of these individuals. Putting that aside, there is also no evidence in the record that would allow the Court to conclude that any of these individuals are similarly-situated to Plaintiff. The record is devoid of any evidence concerning their titles, years of service, or other indicia of similarity. Absent this pertinent information, these individuals cannot serve as comparators in support of Plaintiff's claims. *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir. 1999) ("In order for employees to be 'similarly situated' for the purposes of establishing a plaintiff's prima facie case, they must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's [conduct].") (internal

quotations omitted).

### B.     Hostile Work Environment

A hostile work environment claim requires a showing: (1) that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (2) that "a specific basis exists for imputing the objectionable conduct to the employer." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997). The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of his employment were thereby altered. *Leibovitz v. N.Y. City Transit Auth.*, 252 F.3d 179, 188 (2d Cir. 2001). Importantly, the Second Circuit has held that "Title VII's prohibition against hostile work discrimination affords no claim to a person who experiences it by hearsay." *Id.* at 182. Accordingly, "[d]istrict [c]ourts within the Second Circuit have been . . . reluctant to accept a prima facie case of a hostile work environment based on harassment experienced by a third party." *Kamrowski v. Morrison Mgmt. Specialist*, 05-CV-9234, 2010 WL 3932354, at *16 (S.D.N.Y. Sept. 29, 2010); *see also Pronin v. Raffi Custom Photo Lab, Inc.*, 383 F. Supp. 2d 628, 635 (S.D.N.Y. 2005) ("[M]erely working in the same area as [the individual who was harassed] and witnessing" a harassing incident does not, without more, affect "the terms and conditions of [a plaintiff's] employment.").

Nonetheless, Plaintiff predicates his hostile work environment claim largely on wrongful conduct purportedly experienced by other individuals. In particular, that Plaintiff maintains that Suss repeatedly refused to interview and hire "Orthodox/obvious Jews;" made deals to hire a Jewish candidate only in exchange for an agreement that multiple non-Jewish persons would be hired; violated CUNY By-laws to prevent Orthodox and obvious Jews from receiving

14

promotions; and vetoed Provost Gomez's recommendation to give Plaintiff a compensation increase while giving increases to non-Jews; and used invidious adjectives like "horrible," "the Devil," "crazy," "evil," and "the enemy" to describe Jews.  (Pl.'s Opp'n 25–26; *see also* Pl.'s Resp. 56.1 ¶¶ 124, 136, 147, 155, 166.)  Absent from the record, however, is any evidence that Plaintiff was personally subjected to any of this conduct.  In fact, during his deposition, Plaintiff acknowledged that he did not have any personal knowledge of any acts of vandalism, (Pl.'s Resp. 56.1 ¶ 156), and never personally heard Suss say that there were "too many Jews" or that they were "horrible people."  (*Id.* ¶¶ 147, 151.)

      The only other conduct upon which Plaintiff bases his claim is Suss's veto of Provost Gomez's recommendation to give Plaintiff a compensation increase while giving increases to non-Jews; repeated interjection of Plaintiff's religion into discussions about work-related matters (and disregard of Plaintiff's complaints regarding the same); and refusal to assign Plaintiff and other Orthodox or obvious Jews to college committees.  (Pl.'s Opp'n 26.)  Fatal to his claim, Plaintiff has failed to proffer evidence sufficient to demonstrate that these acts were sufficiently severe or pervasive.  For example, Plaintiff could have proffered evidence demonstrating the frequency of this conduct; or how this conduct interfered with his work performance, or affected his well-being.  *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) ("[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.").  Plaintiff has offered none.  Absent any such evidence, this conduct is more akin to non-actionable mere offensive utterances.  What is more, even if the Court were to deem this conduct severe or pervasive, Plaintiff's claim would

15

nonetheless fail, as Plaintiff has failed to demonstrate how any of this conduct altered the terms and conditions of his employment. Plaintiff's hostile-work-environment therefore fails.

### C. Retaliation

To state a prima facie case of retaliation, a plaintiff must show: (1) "participation in a protected activity; (2) defendant's knowledge of the same activity; and (3) an adverse employment action (4) a causal connection between the protected activity and the adverse employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013). Relevant here, "[i]n the context of retaliation, 'adverse employment action' is broader than it is in the context of discrimination." *Shultz v. Congregation Shearith Israel*, 867 F.3d 298, 309 (2d Cir. 2017). "Nevertheless, the employer's conduct must be 'harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id*. Notably, "[a]ctions that are 'trivial harms' - i.e., 'those petty slights or minor annoyances that often take place at work and that all employees experience'—are not materially adverse." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011) (quoting *Burlington N. & Santa Fe Ry. Co. v. Whit*e, 548 U.S. 53, 57 (2006)). Plaintiff identifies the following instances where he purports to have engaged in protected activity resulting in retaliation——a March 2014 complaint to Block-Rosen; a May 11, 2015 complaint to Pinar Ozgu; an August 4, 2015 EEOC Charge; and a June 2014 complaint to Gomez.[7] (Pl.'s Mem. 28-29.)

---

[7] For the reasons previously set out, any potential Title VII retaliation cause of action premised on the March 17, 2014 and June 3, 2014 complaints is time-barred.

16

*First*, Plaintiff asserts that he was retaliated against when Block-Rosen refused to communicate with him after he complained of discrimination to her on March 17, 2014.[8] (Pl.'s Opp'n 28.)  Defendants dispute that any such complaint was ever made.  (Defs.' Mem. 24.) Even if the Court were to assume that the complaint was made, Plaintiff has failed to demonstrate that he was subjected to an adverse employment action as a result.  *See Fosco v. City Univ. of New York*, 513 F. App'x 4, 5 (2d Cir. 2013) (affirming the district court's grant of summary judgment where the plaintiff failed to present evidence of a causal connection between any protected activity in which she engaged and any adverse employment action.)  According to Plaintiff, because Block-Rosen was the only legal counsel at Kingsborough, her refusal to communicate with him could persuade a reasonable person from initiating a discrimination claim.  (Pl.'s Opp'n 28.)  However, Plaintiff fails to fully articulate how.  Moreover, "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011).  As Defendants note, Block-Rosen serves as legal counsel to Kingsborough, not any individual department chair.  (Defs.' Mem. 29.)  In other words, Plaintiff, nor any other Kingsborough employee is entitled to representation by Block-Rosen.  Accordingly, the denial of representation by Block-Rosen cannot constitute a harm upon which a retaliation claim may be predicated.

*Second*, Plaintiff maintains that Defendants retaliated against him in response to his May 11, 2015 complaint and August 4, 2015 EEOC charge alleging discrimination by Suss. Specifically, Plaintiff complains that President Herzec demanded that Plaintiff withdraw his

---

[8] Plaintiff does not argue that his claim is based on any alleged injury related to Block-Rosen's refusal to communicate with and represent him in connection with Gellar's complaint, though he proffers this fact in his 56.1 statement.  (Pl.'s Resp. 56.1 ¶ 24; *see generally* Pl's Opp'n.)

complaint against Suss, and subsequently critiqued him for refusing to do so. (Pl.'s Opp'n 29–30.) As argued by Plaintiff, "[i]ndisputably, being told to pull a complaint, and getting criticized by the head of the institution for refusing would dissuade any reasonable person from making or supporting a claim of discrimination." (*Id.*) Plaintiff provides no authority to support this contention. For good reason. Criticism for lodging a complaint does not constitute an adverse employment action. Indeed, even if the Court were to construe Herzec's "demand" as a threat to Plaintiff or his employment, the threat, without some accompanying negative consequence, is insufficient to constitute an adverse employment action. *See Tepperwien*, 663 F.3d at 571 (finding that a threat of termination that was never actually carried out did not amount to an adverse employment action for the purposes of a retaliation claim).

*Third*, Plaintiff contends that Suss denied his March 2014 compensation increase request in retaliation for his June 3, 2014 complaint to David Gomez. (Pl.'s Opp'n 29.) As a threshold matter, Plaintiff cites no evidence to support that he was denied a compensation increase. Specifically, he directs the Court to the testimony of Gomez who, when asked, testified: "[m]y understanding was that [Plaintiff] wasn't denied." (*Id.*) For that reason alone, Plaintiff's retaliation claim on this basis should fail. Again, assuming for argument the facts as proffered by Plaintiff, he has nonetheless failed to adduce any direct evidence that the purported denial of a compensation increase was casually linked to his complaints. Nor has he provided the Court with the date on which the purported denial occurred such that the Court can infer a causal connection by virtue of the temporal proximity of the denial to any protected activity.[9] Plaintiff's retaliation claims must therefore fail.

---

[9] As stated above, Plaintiff's attempt to proffer Messrs, Borgese, Weisberg, Connolly, and Professor Taras as comparators is insufficient as Plaintiff has failed to demonstrate that they were similarly-situated to him. *See supra* II.A.3. What is more, Plaintiff's contention that because he had complained about discrimination and was denied a

**III. *Monell* Liability**

Where, as here, a plaintiff has failed to satisfy his burden to establish that his liability against municipal employees, there can be no municipal liability under *Monell*. *See Wright v. City of Syracuse*, 611 F. App'x 8, 12 (2d Cir. 2015) (holding that the plaintiff's claim of liability against a city for municipal liability failed as a matter of law where the plaintiff to establish individual liability on his underlying claims). Accordingly, Plaintiff's *Monell* claim fails.

*     *     *

Having dismissed all of the federal claims in this action, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over Plaintiff's claims under the NYSHRL and the NYCHRL. *See Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.,* 514 F.3d 240, 250 (2d Cr. 2008)) ("We have said that if a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'"); *see also First Capital Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) ("The exercise of supplemental jurisdiction is left to the discretion of the district court[.]"). These claims are therefore dismissed, without prejudice, for lack of subject-matter jurisdiction.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in its entirety, and Plaintiff's claims asserted under federal law are hereby dismissed, with prejudice. Plaintiff's state and city law claims are dismissed without prejudice.

---

compensation increase, and his comparators had not complained about discrimination and were granted a compensation increase, it follows that his denial occurred in retaliation for his complaints is mere conjecture.

|  |  |
|---|---|
|  | SO ORDERED. |
| Dated: Brooklyn, New York | /s/ LDH |
| October 21, 2020 | L<small>A</small>SHANN D<small>E</small>ARCY HALL |
|  | United States District Judge |