**MANDATE**

20-3907-cv
*Lax v. The City University of New York*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of January, two thousand twenty-two.

Present:

>   DENNIS JACOBS,
>   REENA RAGGI,
>   WILLIAM J. NARDINI,
>   *Circuit Judges*.

---

JEFFREY LAX,

>   *Plaintiff-Appellant*,

v.                                                                                    20-3906-cv

THE CITY UNIVERSITY OF NEW YORK,

STUART SUSS

>   *Defendants-Appellees*.

---

|   |   |
|---|---|
| For Plaintiff-Appellant: | JONAH S. ZWEIG, The Zweig Law Firm, P.C, Brooklyn, NY |
| For Defendants-Appellees: | TAHIRIH MEHRIE SADRIEH (Richard Dearing, Eric Lee *on the brief*), *for* Georgia M. Pestana, Acting Corporation Counsel of the City of New York, New York, NY |

Appeal from the judgment of the United States District Court for the Eastern District of New York (LaShann DeArcy Hall, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Jeffrey Lax appeals from the district court's judgment, entered October 22, 2020, granting Defendants' motion for summary judgment on his federal claims and dismissing his state law claims without prejudice.

Lax sued his employer, Kingsborough Community College, a public community college that is part of the City University of New York ("CUNY") system, and his supervisor, Provost—and later Interim President—Suart Suss (together, "Defendants"). Lax holds the rank of professor and is the chair of the Business Department. His complaint arises out of a series of career disappointments which, he alleges, were the result of religious discrimination. He also alleges that Kingsborough administrators retaliated against him for complaining about Suss. Lax filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on August 4, 2015. He later instituted this action, bringing claims of discrimination, retaliation, and the creation of a hostile work environment against CUNY and Suss under 42 U.S.C. § 2000e *et seq.* ("Title VII"); 42 U.S.C. § 1983; the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin Code § 8-101 *et seq.* ("NYCHRL"). We assume the reader's familiarity with the record.

We review a district court's decision to grant summary judgment *de novo*, construing all evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in his favor. *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## I. Lax's Pre-October 2014 Title VII Disparate Treatment and Retaliation Claims Are Time-Barred

As a threshold matter, the district court properly held that Lax's disparate treatment and retaliation claims under Title VII are time-barred to the extent they relate to incidents before October 8, 2014. A Title VII plaintiff must file his EEOC charge within 300 days of the allegedly unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1). Lax filed his EEOC charge on August 4, 2015, which means his 300-day cutoff was October 8, 2014. *See Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012). Lax's Title VII claims alleging a hostile work environment, however, could amount to continuing violations, and if so, would not be time-barred even if they encompass incidents occurring before October 8, 2014. *See id.* at 156.

## II. Disparate Treatment Claims

On summary judgment, the plaintiff must first "establish a prima facie case of Title VII disparate treatment by showing 1) that he belonged to a protected class; 2) that he was qualified for the position he held; 3) that he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory

2

intent." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004). Claims under § 1983 are, with certain exceptions not relevant here, subject to the same standard. *See Naumovski v. Norris*, 934 F.3d 200, 212–14 (2d Cir. 2019). Once the plaintiff makes out a prima facie case, the burden shifts to the defendant to "state a legitimate non-discriminatory reason" for the adverse employment action. *Feingold*, 366 F.3d at 157. The plaintiff must then establish that the proffered neutral reason is pretextual. *See id.*

None of the adverse employment actions on which Lax relies support his disparate treatment claims. First, Lax asserts that Suss subverted the promotion process to prevent him from being promoted to the rank of professor in May 2013. But Lax acknowledges that he was ultimately promoted in October that year, made retroactive to the same date as if he had been successful in the first instance, and he does not assert any injury arising from the delay. Thus, Lax has not established that the temporary denial amounts to adverse employment action. *See Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011) (action that is initially adverse may not be actionable if it is subsequently rescinded). Second, Lax argues that Suss, then serving as interim president, directed the interim provost to deny Lax's request for a salary increase. But Lax failed to demonstrate, as required, that he had the "qualification for the job benefit at issue," *Gregory v. Daly*, 243 F.3d 687, 695 (2d. Cir. 2001), which here was the pay raise. Indeed, Lax adduced no evidence showing how CUNY considered requests for salary increases, while Defendants presented evidence suggesting increases are granted only rarely and under special circumstances. Nor has Lax shown that the raise denial came under circumstances giving rise to an inference of discrimination. Finally, Lax asserts that Suss prevented him from being placed on academic committees at the college. But again, Lax offered no evidence beyond his own speculation about how the committee placement process works. And he acknowledges that he did serve on some committees, just not the ones he would have preferred. *See Beyer v. County of Nassau*, 524 F.3d 160, 164 (2d Cir. 2008) ("[W]e require a plaintiff to proffer objective indicia of material disadvantage; 'subjective personal disappointment[]' is not enough.").

### III. Hostile Work Environment

"In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (internal quotation marks omitted); *see also Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 227 (2d Cir. 2004) (applying the same standard under § 1983). Courts consider "the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance." *Rivera*, 743 F.3d at 20 (internal quotation marks and alterations omitted).

Here, Lax has not adduced evidence of harassment or discrimination that is sufficiently severe or pervasive to rise to the level of a hostile work environment. He bases his claim primarily on incidents involving Suss's comments to other faculty members that he heard about after the fact. While "[e]vidence of harassment directed at other co-workers can be relevant to an employee's own claim of hostile work environment discrimination," *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 190 (2d Cir. 2001), Lax has not pointed to evidence apart from his own

3

conclusory statements demonstrating the frequency of any harassment—including harassment suffered by his co-workers. And while Lax also seeks to premise his hostile work environment claim on CUNY's alleged failure to investigate his complaints against Suss, a "failure to investigate d[oes] not by itself alter the terms and conditions of . . . employment" and thus "could not itself have contributed to or constituted a hostile work environment." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010). As a result, he has not established that discrimination or harassment so permeated his workplace as to create a hostile work environment.[1]

### IV. Retaliation

Lax next contends that the district court erred in granting summary judgment with respect to his retaliation claims. On summary judgment, "a plaintiff must establish a *prima facie* case of retaliation by showing: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks omitted). Once the plaintiff makes out a *prima facie* case, the burden shifts to the defendant to "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* (internal quotation marks omitted). The plaintiff must then "show that retaliation was a substantial reason for the adverse employment action." *Id.* (internal quotation marks omitted).

Lax identifies three incidents of purported retaliation, but none establishes a *prima facie* case. Lax first states that Julie Block-Rosen, Kingsborough's legal counsel, cut off communication with him after he complained about Suss on March 17, 2014. As pursued under Title VII, Lax's claim is time barred for the reasons explained above. Under § 1983, his claim fails for two reasons. With respect to Suss, Lax has not identified any basis for imputing Block-Rosen's conduct to Suss. With respect to CUNY, Lax's claim fails because there is no *respondeat superior* liability under § 1983, and Lax does not identify any evidence suggesting that Block-Rosen acted according to a policy or practice. *See Patterson*, 375 F.3d at 226. Lax next asserts that the interim provost retaliated against him for complaining about Suss by denying his request for a salary increase. Once more, under Title VII, his claim is untimely. And under § 1983, his retaliation claim fails for the same reasons as his discrimination claim—he has adduced no evidence showing that he was qualified for a salary increase, nor does he proffer evidence disputing the interim provost's statement that Suss was not made aware of Lax's complaints about Suss. Finally, Lax argues that the college president retaliated against him for filing an internal complaint with CUNY about Suss. But all Lax alleges is that the president mildly criticized him; this does not constitute an "adverse employment action," which in the retaliation context is one that is "harmful to the point that it

---

[1] Lax also argues that Kingsborough failed adequately to investigate anti-Semitic graffiti on campus. His "spreadsheet of anti-Semitic incidents at Kingsborough," J. App'x 996, is of uncertain provenance and, therefore, not clearly admissible. *Cf. Figueroa v. Mazza*, 825 F.3d 89, 98 n.8 (2d Cir. 2016) ("[A]ny evidence considered on summary judgment must be reducible to admissible form."). Based on his own analysis of the spreadsheet, Lax argues that only 28% of such incidents were investigated. But Lax does not detail how he arrives at that figure—the spreadsheet does not include a binary "investigated/not investigated" value—and, as to at least one incident Lax claims was not investigated, the spreadsheet indicates that the police were notified. Moreover, Lax proffers no evidence that the 28% investigation rate, however that figure was calculated, was so unreasonably low as to constitute a hostile work environment, nor does he show that anti-Semitic graffiti was investigated less frequently than graffiti targeted at other protected groups.

could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Shultz v. Congregation Shearith Israel of N.Y.*, 867 F.3d 298, 309 (2d Cir. 2017) (internal quotation marks omitted).

## V. *Monell* Liability

Finally, Lax asserts that CUNY is liable for the discrimination he suffered under the Supreme Court's decision in *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978). Because he has failed to establish individual liability on his discrimination, retaliation, and hostile work environment claims, Lax's claims against CUNY under *Monell* fail as a matter of law. *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986).[2]

\* \* \*

We have considered Lax's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

[2] Because the district court properly granted summary judgment in favor of Defendants on Lax's federal claims, it appropriately declined to exercise jurisdiction over the claims under the NYCHRL and the NYSHRL. *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008).